## APSEY, RECEIVER OF THE FIRST NATIONAL BANK OF CHELSEA, *v.* KIMBALL.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

## SAME *v.* WHITTEMORE.

### ERROR TO THE SUPERIOR COURT OF THE STATE OF MASSA-CHUSETTS.

Nos. 132, 133. Argued April 20, 1911.—Decided May 29, 1911.

Shareholders who have complied, so far as steps required to be done on their part are concerned, with the provisions of the act of July 12, 1882, 22 Stat. 162, c. 290, in regard to withdrawing from a national banking association, two-thirds of the shareholders whereof have asked for a renewal of the charter, cease to be members of the association, even if, through no fault of their own, the final action is not taken; and such shareholders are not liable for assessments subsequently made by the Comptroller of the Currency under § 5151, Rev. Stat.

164 Fed. Rep. 830, and 199 Massachusetts, 65, affirmed.

THE facts, which involve the construction of § 5151, Rev. Stat., and the liability of shareholders in national banks thereunder, are stated in the opinion.

*Mr. George L. Wilson* for plaintiff in error.

*Mr. Wilbur H. Powers,* with whom *Mr. Henry H. Folsom* and *Mr. Walter Powers* were on the brief, for defendants in error.

MR. JUSTICE DAY delivered the opinion of the court.

These cases are practically alike. No. 132 is a writ of error to the United States Circuit Court of Appeals for the First Circuit; No. 133 is a writ of error to the Superior Court of Massachusetts. The suits were originally brought by Albert S. Apsey, receiver of the First National Bank of Chelsea, Massachusetts, against George E. Kimball and Anna G. Whittemore, respectively, under § 5151 of the Revised Statutes of the United States, making the shareholders of a national banking association individually responsible in a sum equal to the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares.

In each of the cases the courts whose judgments are here for review reached the conclusion that the shareholder sued was not liable to the receiver on account of such statutory obligation. In the case from Massachusetts, while the final judgment was entered in the Superior Court of that State, the decision was in the Supreme Judicial Court of Massachusetts, and is reported in 199 Massachusetts, 65.

As originally organized, national banks had a corporate existence of twenty years. By the act of July 12, 1882, 22 Stat. 162, c. 290, such banks were authorized to continue their corporate existence for another twenty years. As pointed out in § 2 of the act, such extension must be authorized by consent in writing of shareholders owning not less than two-thirds of the capital stock of the association. Before granting a certificate of approval of such extension the Comptroller of the Currency is required to cause a special examination of the bank to be made, and

if after such examination, or otherwise, it appears to him that the association is in a satisfactory condition, he is required to grant his certificate of approval, or if it appear that the condition of the association is not satisfactory, he shall withhold the same.

Section 5, which is the important one in this case, provides:

"That when any national banking association has amended its articles of association as provided in this act, and the Comptroller has granted his certificate of approval, any shareholder not assenting to such amendment may give notice in writing to the directors within thirty days from the date of the certificate of approval, of his desire to withdraw from said association, in which case he shall be entitled to receive from said banking association the value of the shares so held by him, to be ascertained by an appraisal made by a committee of three persons, one to be selected by such shareholder, one by the directors, and the third by the first two; and in case the value so fixed shall not be satisfactory to any such shareholder, he may appeal to the Comptroller of the Currency, who shall cause a reappraisal to be made, which shall be final and binding; and if said reappraisal shall exceed the value fixed by said committee, the bank shall pay the expenses of said reappraisal, and otherwise the appellant shall pay said expenses; and the value so ascertained and determined shall be deemed to be a debt due, and be forthwith paid, to said shareholder from said bank; and the shares so surrendered and appraised shall, after due notice, be sold at public sale, within thirty days after the final appraisal provided in this section."

Except as to the number of shares held by the shareholders sued in the two cases, and the times at which the same were acquired, the facts in both cases are essentially the same. Case No. 132 was tried upon an agreed statement of facts, as follows:

"The First National Bank of Chelsea was, prior to August 16, 1906, a banking association duly organized and existing under the provisions of the National Banking Act and amendments, with a capital of $300,000 divided into 3000 shares of the par value of $100 each; that on said August 16, 1906, the said bank closed its doors and suspended business; that on August 25, 1906, the plaintiff was duly appointed by the Comptroller of the Currency, receiver of said bank; that on September 25, 1906, the Comptroller of the Currency ordered an assessment of $100 per share on each share of stock in said bank, payable by the stockholders, according to their respective holdings, on or before October 25, 1906, and ordered the plaintiff to collect and recover the same by proper proceedings; that the defendant received from said receiver a copy of said order of assessment and a separate notice and demand for payment, all of which were in the following form:

\*. \* \* \* \* \* \* \*

"The defendant, on November 18, 1901, became the owner of twenty (20) shares of the capital stock of said bank, and on said date received two certificates, each for ten (10) shares; on November 20, 1901, he became the owner of fifteen (15) shares and received a certificate therefor; and on August 31, 1904, he became the owner of five (5) shares, and received a certificate therefor. Said four certificates were each and all in the following form, *mutatis mutandis*, and their numbers were respectively 1235, 1236, 1237 and 1238.

Massachusetts

The First National Bank of Chelsea.

No. 1235. 10 Shares.

"This certifies that George E. Kimball of Boston, Mass., is the proprietor of ten (10) shares of the capital stock of the First National Bank of Chelsea, transferable only on the books of the bank in person or by attorney, on the surrender of this certificate. 'No transfer of the stock of

this association shall be made without the consent of the board of directors by any stockholder who shall be liable to the association either as principal debtor or otherwise.'

Chelsea, Nov. 18, 1901.

S. B. HINCKLEY, *President.*

WALTER WHITTLESEY, *Cashier.*

Shares $100 each.

"The defendant held said certificates from the respective dates of their issuance, as above specified, down to and after the date of the suspension of the bank, and he had them in his possession and produced them at the trial.

"The twenty year period of succession of said bank under the provisions of the National Bank Act expired on September 5, 1904, and on or before said date proper proceedings were taken under the Act of July 12, 1882 (one of the amendments to the National Bank Act), to amend the articles of association so as to extend the period of succession for a period of twenty years from said September 5, 1904, and said articles were so amended.

"The defendant did not assent to said amendment, but, acting in pursuance of the provisions of Section 5 of said Act of July 12, 1882, and within the time therein named, he gave to the bank directors due notice of his desire to withdraw from the association, and afterwards appointed one William R. Dresser as one member of the appraisal committee under said Section 5, and gave due notice of such appointment to the directors of the bank, and said directors appointed Sylvester B. Hinckley as a second member of said committee of appraisal, but these two never appointed the third member, and no appraisal was ever made. The said Sylvester B. Hinckley was at said time a director of said bank, its president, and a large stockholder therein.

"The defendant, after waiting some months subsequent to the appointment of said Dresser and Hinckley, during which time he made all reasonable efforts in good faith to

have said third member appointed, but without result, in September, 1905, retained an attorney, who at once communicated with said Hinckley, urging him to join in the making of such appointment, and the said Hinckley, or the bank, also retained counsel, and the two counsel conducted a correspondence on the question of such appointment, which correspondence, however, failed to result in such appointment.

"On January 1, 1905, at the time of declaring its regular semi-annual dividend, the bank declared a regular dividend of three (3) per cent to the defendant on said forty (40) shares and sent him a dividend check therefor, which the defendant promptly returned, declaring that he was not a stockholder in the bank, and declining to accept or to use the check. Further regular dividends were declared to him by the bank on July 1, 1905, January 1, 1906, and July 1, 1906, the latter being the last dividend declared by the bank prior to the suspension.

"None of the said last-mentioned dividends were sent to or received by the defendant. The defendant was also credited on the bank's ledger with said forty (40) shares. The bank never refused the defendant or withheld from him any of the rights or privileges of a stockholder, but the defendant never used or asserted any of said rights or privileges of a stockholder after September 5, 1904. The following extract from the bank's by-laws was introduced in evidence:

"'SECTION 15. The stock of this bank shall be assignable only on the books of this bank, subject to the restrictions and provisions of the Act; and a transfer book shall be kept in which all assignments and transfers of stock shall be made. No transfer of stock of this association shall be made without the consent of the board of directors by any stockholder who shall be liable to the association either as principal debtor or otherwise; and certificates of stock shall contain upon them notice of this provision.

Transfers of stock shall not be suspended preparatory to a
declaration of dividends and except in cases of agreement
to the contrary expressed in the assignments, dividends
shall be paid to the stockholder in whose name the stock
shall stand on the day on which the dividends are declared.

"'SECTION 16. Certificates of stock signed by the presi-
dent and cashier may be issued to stockholders, and the
certificate shall state upon the face thereof that the stock
is transferable only upon the books of the bank; and when
stock is transferred the certificates thereof shall be re-
turned to the bank and cancelled and new certificates
issued.'"

The question, then, is: Did the shareholders, defendants
in error, cease to be such, or were they still shareholders
when the bank failed and liable to assessment for the
benefit of creditors? It is the contention of the plaintiffs
in error that they did not cease to be shareholders un-
til, under § 5 of the act, an appraisal of the value of the
stock had been made and the certificates of stock duly
surrendered. Upon the other hand, the defendants in
error contend that, upon complying with the steps re-
quired of them, in giving notice, appointing an appraiser,
and using diligence to have an appraisal, they ceased to
be shareholders and were no longer liable to pay the assess-
ment made.

The First National Bank of Chelsea was originally in-
corporated, under the statute, for a period of twenty years,
and while that was its span of corporate life, the defend-
ants in error became shareholders therein, received certif-
icates of shares and were duly registered as shareholders.
As twenty years was the life of the corporation, the share-
holders had not bound themselves to remain such after
the expiration of that definite period of time. As the stat-
ute originally stood, the venture would necessarily ter-
minate at the end of that time.

Congress recognized that it might be proper to continue

the organization, that at least a part of the shareholders might desire to do so, and therefore the act of July 12, 1882, 22 Stat. ch. 290, provided for the extension of the corporate existence of the bank. It was also recognized that a part of the shareholders might wish to retire from the venture, and it was therefore provided that two-thirds of the shareholders must acquiesce to continue the bank's existence, and must certify such desire to the Comptroller of the Currency, who must approve of the extension of the corporate existence.

It is provided in § 5, above quoted, that each non-consenting shareholder shall give notice in writing to the directors of the association, within thirty days of the date of the certificate of approval by the Comptroller, of his desire to withdraw from the association; and further, that he thereupon shall be entitled to receive from the association the value of the shares held by him, such value to be ascertained by an appraisal by a committee of three, one to be selected by the shareholder, one by the directors of the association, and the third by the first two thus selected, the value ascertained and determined is to be deemed a debt of the bank and forthwith paid, and the surrendered shares to be sold after due notice, at public sale, after thirty days from the final appraisement provided for in the section.

The agreed facts show that the shareholders here involved strictly complied with the statute in giving the required notice, and in the selection of their appraiser. The bank also selected its appraiser, and the facts show that the shareholders urged action, employed counsel, and endeavored to bring about the appraisal. Apparently the delay was caused by the bank's representative, least this was the possible inference suggested by the preme Judicial Court of Massachusetts. 199 Massachusetts, 68.

We agree with the courts below that the defendants

ceased to be shareholders after thus complying with the statute. Section 5151 of the statute makes shareholders liable to the assessment. The statute makes specific provision for the manner in which the shareholder may sever his connection with the corporation. These necessary steps were taken, as the agreed facts show. The shareholders had a right to end their connection with the association at the termination of the period of original incorporation, or, if they so desired, they might go on with the association in its renewed life.

Section five provides for the manner of manifesting such determination to terminate their relations with the corporation at the expiration of its original life. True, other things were to be done to ascertain the amounts to be paid the retiring shareholders; that they were not done in these cases is no fault of the retiring shareholders. We cannot agree with the contention of the plaintiff in error that they ceased to be shareholders only when the appraisal had been made, and the certificate of shares surrendered.

It is said that the shareholders, when the bank's representative did not act in the matter of the appraisal, might have brought suit to compel further proceedings, or to cancel their stock on the books of the company. Again we answer—that they did all that the statute required them to do.

But, it is urged, in not getting their names off the books, whatever might be their relations with the bank, these shareholders continued to be registered shareholders, and as such liable to creditors. Cases are cited which hold that where one permits his name to be registered on the books of the bank as a shareholder, or where he fails to obtain a transfer of the shares to another name, although he has in fact parted with his stock, such shareholder remains liable to the creditors. (See *National Bank* v. *Case*, 99 U. S. 628; *Matteson* v. *Dent*, 176 U. S. 521).

But those are not cases where shareholders have done all that the law required in order to end their relation to the bank and to get their names off the books.

Where the shareholder has performed every duty which the law imposes upon him in order to secure a transfer of the stock, the fact that it is not transferred on the register of the bank does not continue his liability as such shareholder. *Whitney* v. *Butler,* 118 U. S. 655; *Earle* v. *Carson,* 188 U. S. 42. The facts of the cases at bar bring them within this principle. These shareholders had done all that the law required of them. Any further action to evidence the changed relation of the shareholders to the bank, upon its books, was not a matter within the control of the shareholders.

It is argued that the construction we have given the statute may amount to a reduction of the capital stock to the detriment of creditors. The corporation in which these shares were held expired in twenty years. The creditors after that time had no right to hold these shareholders in face of the law, of which all must take notice, permitting the retirement of non-assenting shareholders. If this results in the diminution of outstanding shares of the bank assessable for creditors, it was the very thing made possible by the amended statute. New shareholders are to be brought in by the sale of the stock, as provided in § 5. It is true that these defendants retained their certificates, but they were not obliged to surrender them except upon payment for their shares.

It is said, had the corporation made a large gain, instead of failing after the action of these shareholders in giving notice and naming their appraiser, they might have withdrawn their notice, and obtained the benefit of such increase—but this depends upon the construction of the statute. As we view it, when the shareholders made their election to retire at the end of the first twenty-year period of corporate organization, and took the steps re-

quired in § 5, by giving notice and appointing an appraiser to obtain a valuation of, and payment for their shares of stock, they thereby ceased to be shareholders beyond the original twenty-year term of the life of the corporation, and they could neither share its profits, nor be compelled to bear its burdens.

The views here expressed require the affirmance of the judgments in both cases.

*Affirmed.*