## SWAN v. MORGAN.
### No. 492.

District Court, N. D. West Virginia.
Feb. 22, 1938.

Victor H. Shaw, of Fairmont, W. Va., for plaintiff.

Tusca Morris, of Fairmont, W. Va., for defendant.

BAKER, District Judge.

By stipulation, this case at law was tried before the court in lieu of a jury.

### Findings of Fact.

Rufus E. Morgan, who was sometimes known as R. E. Morgan, and who transacted his business generally in the name of R. E. Morgan, died December 28, 1927, intestate, leaving surviving him his widow, Mrs. Columbia A. Morgan, and his daughter and only heir at law, Miss Ednah M. Morgan. His daughter was appointed administratrix of the estate of Rufus E. Morgan, deceased, on January 8, 1928, by the county court of Marion county, W. Va., and then and there entered upon the discharge of her duties as such administratrix, and has been such administratrix ever since her said appointment.

Appraisers of said estate were appointed by said county court on the 9th day of

January, 1928, and said appraisers completed the appraisal of said estate and filed the same in the county clerk's office of Marion county on April 12, 1928. Included in said appraisement bill, made by said appraisers, were ten shares of the capital stock of the Peoples National Bank standing in the name of "R. E. Morgan" on the books thereof and valued at $1,250. No other capital stock of the Peoples National Bank of Fairmont standing in the name of "R. E. Morgan," or otherwise, was found, or known of, or appraised.

The Home Savings Bank, Fairmont Trust Company, and said Peoples National Bank were combined and merged, on the ———— day of November, 1929, into what was known as The Union National Bank of Fairmont, Fairmont, W. Va. On June 14, 1930, said ten shares in the Peoples National Bank, so appraised, were delivered to the said "The Union National Bank," and in lieu thereof the said The Union National Bank issued to "Miss Edna M. Morgan" certificate No. 325 for forty shares of the capital stock of said The Union National Bank of Fairmont. Miss Morgan was the owner of said forty shares of stock at the time the said The Union National Bank of Fairmont became insolvent and ceased to do business on December 16, 1930.

The Comptroller of the Currency on February 9, 1931, made an assessment and requisition upon the shareholders of the said The Union National Bank of Fairmont. J. M. Swan, receiver of said The Union National Bank, pursuant to said assessment and requisition, made demand upon the shareholders of said bank to pay their assessment on March 16, 1931. On the date last aforesaid, Miss Morgan appeared at the said The Union National Bank and paid her assessment on said forty shares of stock standing in her name on the books of said bank in the amount of $800 to the said receiver.

Before the death of Rufus E. Morgan, his daughter had no information or knowledge that he was the owner of any other capital stock in the Peoples National Bank of Fairmont other than the said ten shares of said stock, which were so appraised by the said appraisers. Ednah M. Morgan, after the death of her father and prior to her appointment as administratrix, and after her appointment as such administratrix, had no knowledge or information of any capital stock of the said Peoples National Bank standing in the name of Rufus E. Morgan, deceased, except the said ten shares so appraised, until June 14, 1930.

Prior to the appointment of said daughter as administratrix, she had had no experience and little or no knowledge of the capital stock of corporations. She never owned any capital stock in any corporation until after the death of her father, and then only such stocks as she inherited from his estate as his only heir at law.

Immediately after her appointment as such administratrix, she, with the appraisers, made a thorough investigation of all the papers and effects of the said Rufus E. Morgan, deceased, and found no evidence of any capital stock in the said Peoples National Bank, except the said ten shares so appraised. There was no record in the papers of the said Rufus E. Morgan, deceased, belonging to his effects, indicating that he in his lifetime had owned any other shares of capital stock in said Peoples National Bank, except the ten shares so appraised.

Some time after the formation of said The Union National Bank the said Ednah M. Morgan, as such administratrix, received two written notices about a month apart to bring in the stock of said estate issued by the said Peoples National Bank and standing in the name of Rufus E. Morgan, and have the same transferred to certificates in the name of said The Union National Bank. Mr. M. A. Fletcher, the agent of said The Union National Bank, having charge of the transfer of the stock of the merged banks into stock in the name of the said The Union National Bank, solicited personally Miss Morgan on one occasion to have transferred said stock of her father's estate. When she received the second written request, or shortly thereafter, she went to the said The Union National Bank and tendered the ten shares of said capital stock in the Peoples National Bank, so appraised by the appraisers of her father's estate, and asked that the same be transferred into her name as the only heir of the said Rufus E. Morgan, deceased. When said ten shares, so appraised, were, on June 14, 1930, handed the officers of the said The Union National Bank for the purpose of being so transferred, thereupon the officers of the bank inquired where the other ten shares of the capital stock of the Peoples National Bank, standing in the name of Rufus E. Morgan, were. The administratrix thereupon informed said officials that there were no other shares owned by said estate, and that she knew of no other shares of said stock

standing in the name of her father. The officers pointed to the records of the Peoples National Bank which showed that Rufus E. Morgan, in his lifetime, was the owner of an additional ten shares of stock in said Peoples National Bank. This was the first information that Miss Morgan ever had that there were additional ten shares of the capital stock of said Peoples National Bank standing in the name of Rufus E. Morgan, and she thereupon insisted to said bank officials that she never heard of said stock before and never knew anything about it, and that there must be some mistake in her father's estate owning said stock. She further insisted then and there that no such stock was found by the appraisers or appraised by them as a part of said estate. Thereupon said officers demanded to see the appraisement bill of said estate. She secured the same immediately and presented it to said bank, and the officials thereof became aware that only said ten shares of stock, which the administratrix was then and there presenting for transfer, were appraised by the appraisers.

The administratrix thereupon consulted her attorney, Tusca Morris, to know what to do about these additional ten shares that appeared to belong to the estate of Rufus E. Morgan, deceased, as disclosed by the books of the Peoples National Bank. She was advised to have Mr. M. A. Fletcher, who was active in having said transfer made, go and see George B. Morgan, a brother of the decedent, and Dr. E. N. Eddy, who had married a sister of the decedent, and ascertain if either of them could tell anything about the ownership of this additional ten shares of stock. The administratrix advised the officers of the bank of her instruction, and Mr. Fletcher immediately went to investigate the ownership of the additional ten shares of said stock. He went first to see Dr. E. N. Eddy, who had an office in Fairmont, and told Dr. Eddy that he was having each shareholder in the merged banks have their stock properly transferred in the name of the said The Union National Bank, and that the administratrix of the estate of Rufus E. Morgan, deceased, had no information whatever of additional ten shares of the capital stock of the Peoples National Bank, standing in the name of "Rufus E. Morgan." Whereupon Dr. Eddy told Mr. Fletcher that he was the owner of said additional ten shares of stock, and that at that time, and for several years prior thereto, he had had the same filed with

The National Bank of Fairmont as collateral security on his note; also he further told Mr. Fletcher then and there that he had acquired this stock from Rufus E. Morgan in his lifetime when he sold and conveyed to Rufus E. Morgan 69.0075 acres of the Pittsburgh coal and mining rights thereto, situate in Monongalia county, W. Va., by deed, bearing date June 8, 1925. Mr. Fletcher emphasized the fact to Dr. Eddy that he desired to get the stock properly transferred on the books of the said The Union National Bank.

Within a day or two after the above conversation between Dr. Eddy and Mr. Fletcher, the administratrix' attorney called upon The National Bank of Fairmont and had the cashier produce said additional ten shares of capital stock of the Peoples National Bank, evidenced by certificate No. 270, issued to "Rufus E. Morgan" on April 29, 1922. The cashier of the National Bank of Fairmont was notified of Dr. Eddy's contention of his ownership of said stock. Neither Dr. Eddy nor The National Bank of Fairmont took any steps or initiative to have the said additional ten shares transferred to the stock of the said The Union National Bank.

The administratrix had been instrumental in aiding and finding said additional ten shares of stock and the ascertainment of the ownership thereof, and the location of said certificate evidencing said shares. Said The Union National Bank of Fairmont through its agent, Mr. Fletcher, had been instrumental and active in having the stock certificates transferred from the merged banks.

Shortly after Mr. Fletcher saw Dr. Eddy and ascertained about the ownership of said additional ten shares of stock, Mr. Fletcher saw the administratrix and advised her that Dr. Eddy claimed said stock and gave her the details of how Dr. Eddy said he had purchased the same from her father in his lifetime. Said stock certificate No. 270 had attached to it a blank power of attorney duly signed by R. E. Morgan, authorizing the transfer of said stock. In this conversation the administratrix inquired of Mr. Fletcher if there was anything further she should do, and Mr. Fletcher advised her nothing else and that he would now look after the transfer of the stock to the owner thereof. Any other acts done by the administratrix, looking toward a transfer of said stock, necessarily would have been ineffectual and a vain thing to do. She had

no possession of said stock, neither did she have the right of possession; she had no control over the same; she could make no disposition thereof; she was without authority or power to have the stock transferred into shares of the said The Union National Bank. Since Mr. M. A. Fletcher, the agent of said The Union National Bank, was taking the initiative and was instrumental in having said stocks of the merged banks transferred and had promised Miss Ednah M. Morgan, the administratrix, to have said additional ten shares transferred, she had the right to assume, and did assume, that Mr. Fletcher would have said additional ten shares properly transferred on the books of the said The Union National Bank to Dr. E. N. Eddy. She then thought she had discharged her every duty in connection with this stock.

It was contended in the hearing of this case that Ednah M. Morgan, administratrix, had received dividends on said additional ten shares of stock in the said Peoples National Bank, at the same time she received dividends on the ten shares of capital stock in said bank, so appraised by said appraisers. It may or may not be true that she received dividends on said additional ten shares of stock, after said consolidation and merger, at the same time she received dividends from said The Union National Bank on the said ten shares of stock so appraised. She testified if she did receive any dividend on this additional ten shares of stock she is not aware of the fact. The dividends she received from the Peoples National Bank, before the merger, and the dividends she received from The Union National Bank, after the merger, she thought were on the ten shares of stock so appraised by the appraisers. She was unfamiliar with the payment of dividends on stock and her attention was never called to the fact that any dividends received by her, as administratrix of said estate, applied to the additional ten shares. The administratrix emphasizes the fact that she may have indirectly voted the ten shares of stock in the Peoples National Bank, so appraised by the appraisers, for the merger and consolidation of the three banks into The Union National Bank, and she may, at the same time, have voted said additional ten shares of stock in the Peoples National Bank, but, if she did do so, she did it without any knowledge or knowing that there were an additional ten shares of stock in the Peoples National Bank, standing in the name of "R. E. Morgan" and evidenced by certificate No. 270.

The administratrix stated that she is ready to pay back, and will pay back, to the proper party, any dividends which it is ascertained she has received on the additional shares of stock in the Peoples National Bank, evidenced by certificate No. 270, if any has been received by her.

Before said The Union National Bank became insolvent and closed its doors, said administratrix had made a partial settlement of the estate of Rufus E. Morgan, deceased, and all the estate then in the hands of said administratrix, and coming into her hands before the insolvency of said The Union National Bank, has been distributed between the distributees thereof. No money or assets of said estate were in the hands of said administratrix at the time the said The Union National Bank became insolvent, nor at the time the Comptroller of the Currency made an assessment and requisition upon the shareholders in the said bank, nor has any funds or money or assets come into her hands since that time.

At the time said The Union National Bank became insolvent, on December 16, 1930, the attributes of ownership of said additional ten shares of said stock were being exercised by Dr. E. N. Eddy, and not by such administratrix. Dr. Eddy had the legal title to such shares and possession thereof, subject to the rights of The National Bank of Fairmont, where said stock was put up as collateral security on Dr. Eddy's note. Dr. Eddy's ownership of said stock was known to said The Union National Bank long before its insolvency, as also were the details of the transaction between Rufus E. Morgan, in his lifetime, and Dr. E. N. Eddy, in the sale of said stock.

### Conclusions of Law.

When Rufus E. Morgan sold and delivered the ten shares of the capital stock of the Peoples National Bank, evidenced by certificate No. 270, to Dr. E. N. Eddy, the title to these shares passed and vested in the purchaser. The fact that the shares of bank stock are transferable on the books of the bank does not limit the right of the transferor to pass title to the transferee. Foster v. Row, 120 Mich. 1, 79 N.W. 696, 77 Am.St.Rep. 581, 582.

"That the actual owner of the stock [in a national bank] may be held for the assessment, although his name does not appear upon the transfer books of the bank,

is well settled." Early, Receiver, v. J. L. Richardson, 280 U.S. 496–500, 50 S.Ct. 176, 177, 74 L.Ed. 575, 69 A.L.R. 658; Ohio Valley National Bank v. Hulitt, 204 U.S. 162, 167, 168, 27 S.Ct. 179, 51 L.Ed. 423.

When a shareholder, acting in good faith, delivers his certificate of stock, with a blank power of attorney for making the transfer, and receives the purchase money, the sale is complete and the title passes. The title to stock passes on the delivery of certificate to purchaser, with authority to have shares transferred on the books of the bank. Johnston v. Laflin, 103 U.S. 800, 26 L.Ed. 532, and cases cited.

■ The legal title to said additional ten shares of the stock, evidenced by certificate No. 270, never vested in the administratrix. The administratrix did not become a shareholder in The Union National Bank, as certificate No. 270, for said ten shares, was not appraised and was not included in the inventory made by the appraisers of said estate. Parker v. Robinson, 1 Cir., 71 F. 256. Wills and Administration, § 402, p. 716, vol. 1.

■ The said estate of Rufus E. Morgan, deceased, or the administratrix thereof, did not own said additional ten shares of stock of said Peoples National Bank untransferred as stock in said The Union National Bank at the time said The Union National Bank became insolvent and ceased to do business, or at the time the said Comptroller of the Currency made an assessment and requisition against the stockholders in said The Union National Bank, or at any other time. At no time was said administratrix the owner and holder of forty shares of the capital stock of the said The Union National Bank, as alleged in the notice in this case, nor is said administratrix now the owner and holder of said shares.

Rufus E. Morgan sold and delivered, in his lifetime, to Dr. E. N. Eddy, said additional ten shares of capital stock of said Peoples National Bank, evidenced by certificate No. 270, in the year 1925, and thereby the said Dr. Eddy became the real owner thereof, and by reason thereof, became solely liable for the assessment and requisition made on said stock by the Comptroller of the Currency.

"In fixing the liability for assessments against stock of an insolvent national bank, the effort of the court should be to ascertain who is the actual owner, and to hold him, releasing the apparent owner, if he has done nothing to deceive or mislead." Lucas v. Coe, C. C., 86 F. Syl. 2, p. 972.

"The real owner of the shares of the capital stock of a national banking association may, in every case, be treated as a shareholder within the meaning of [Rev. St.] section 5151." Pauly v. State Loan & Trust Co., 165 U.S. 606, at page 619, 17 S.Ct. 465, 470, 41 L.Ed. 844.

■ The name of the person on the stock registry of a national bank creates only a presumption of liability (and in the instant case subject to the terms of the federal statute, 12 U.S.C.A. § 66), and is not conclusive, and may and can be rebutted, and in this case such presumption has been rebutted and absolutely overcome by the evidence.

■ It is not disputed that the actual possession of said stock had been delivered and given to Dr. Eddy at the time of said sale. Under the law, both the legal and equitable title to said stock passed to said Dr. Eddy at the time of the sale. Johnston v. Laflin, 103 U.S. 800, at page 804, 26 L.Ed. 532.

The real owner of said additional ten shares of stock, evidenced by certificate No. 270, is Dr. E. N. Eddy, who should, therefore, under the law, be required to pay said assessment on said stock.

■ But slight evidence of mutual recognition by the corporation and the transferee of stock, of the relation of stockholder, is sufficient to render such transferee liable as a shareholder for calls and assessments upon his stock. Wright, Receiver, v. Keene, 82 Mont. 603, 268 P. 545, 60 A.L.R. 109, and especially annotation thereon on page 114.

■ Mr. Fletcher, the agent of said The Union National Bank, having charge of the transfer of the stock of the merged banks into stock in the name of the said The Union National Bank, advised the administratrix that there was nothing further for her to do, that he would attend to the transfer of said stock to the owner thereof. Ednah M. Morgan assumed, and had the right to assume, under the circumstances, that said The Union National Bank would have said stock transferred on the registry of said bank to the real owner thereof, because said bank was and had taken the initiative in such transfer, and had full information of the transaction between Rufus E. Morgan and Dr. Eddy of said stock, and had promised, through its agent, Fletcher,

to transfer said stock to the name of the owner thereof. She had no information afterwards that the transfer was not made according to Fletcher's promise; therefore, every duty had been performed by said administratrix which the law imposed upon her, in order to secure a transfer of said stock to the name of the owner thereof on the registry of the said The Union National Bank. Whitney v. Butler, 118 U.S. 655, 662, 663, 7 S.Ct. 61, 30 L.Ed. 266; Earle v. Carson, 188 U.S. Syl. 1, p. 42, 23 S.Ct. 254, 47 L.Ed. 373; McDonald v. Dewey, 202 U.S. 510, at pages 521, 522, 26 S.Ct. 731, 50 L.Ed. 1128, 6 Ann.Cas. 419; Apsey v. Kimball, 221 U.S. 514, 523, 31 S.Ct. 695, 55 L.Ed. 834.

I believe, both under the law and in consideration of justice and fair dealing, judgment should be entered for the defendant administratrix, and such will accordingly be done.