E. D. ROBBINS et al., appellees, v. EVERETT BEATTY et al., appellants.

No. 48602.

(Reported in 67 N.W.2d 12)

NOVEMBER 16, 1954.

Tobin, Bordewick & Fischer, of Vinton, and Simmons, Perrine, Albright, Ellwood & Neff, of Cedar Rapids, for appellants.

Edward F. O'Connor, of Atlantic, Edward L. O'Connor and Messer, Hamilton & Cahill, all of Iowa City, for appellees.

GARFIELD, C.J.—This is an equity action brought under section 491.25, Code, 1946, by three owners of corporate stock (79 shares in all) in Shellsburg Grain & Lumber Company to recover the real value of their stock from owners of 428 shares which, it is alleged, were voted in favor of renewing the corporation to exist perpetually. There was trial to the court and decree for plaintiffs from which defendants have appealed.

Another action growing out of the same controversy was before us in State ex rel. Robbins v. Shellsburg Grain & Lbr. Co., 243 Iowa 734, 53 N.W.2d 143.

I. Defendants first contend there was no renewal of the corporation such as requires them to purchase plaintiffs' stock under section 491.25, the only action taken was by amendment to the articles of incorporation and 491.25 is not applicable. The trial court held against this contention and found there was a renewal which rendered defendants liable to plaintiffs under section 491.25 for the real value of their stock.

The corporation was formed in 1909 to exist twenty years. Its articles were renewed in 1929 by the adoption of amended and substituted articles to provide for continued existence until September 15, 1949. The total capital stock was $15,000 divided into 600 shares each of the par value of $25. The

amended and substituted articles provided indebtedness should not exceed two thirds the capital stock. At the stockholders' regular annual meeting on January 23, 1948, it was moved, seconded and carried that amended articles of incorporation be "accepted" which continued the corporate existence perpetually until dissolved and authorized indebtedness to the extent deemed advisable or necessary by the board of directors and manager, subject only to limitation imposed by holders of a majority of the stock.

Plaintiffs' 79 shares were voted against the above motion. Defendants' 428 shares were voted in favor of it. Plaintiffs claim and the trial court held this action taken January 23, 1948, was a renewal of the corporation under section 491.25 which also requires defendants to purchase plaintiffs' stock at its real value.

Section 491.25, Code, 1946, provides: "Corporations existing for a period of years may be renewed * * * for the same or shorter periods, or * * * to exist perpetually, if a majority of the votes cast at any regular election, * * * at any time during the corporate life or within three months after the termination thereof, be in favor of such renewal, and if those voting for such renewal will purchase at its real value the stock voted against such renewal. Stockholders voting for renewal shall have three years from the date such action for renewal was taken in which to purchase the stock voted against such renewal, which purchase price shall bear interest at eight percent per annum from the date of such renewal action until paid."

The general substance of the first sentence of section 491.25, including the provision for purchase of stock voted against renewal, has been the law of Iowa since the Code of 1851 (section 681). The second sentence was added in 1933 by chapter 143, section 1, Acts 45th General Assembly. See State ex rel. Robbins v. Shellsburg Grain & Lbr. Co., supra, 243 Iowa 734, 738, 739, 53 N.W.2d 143, 145; Terrell v. Ringgold County Mut. Tel. Co., 225 Iowa 994, 996, 997, 282 N.W. 702.

Before 1943 there was no Iowa statute authorizing perpetual existence of a corporation. In that year chapter 225,

Acts 50th General Assembly, amended several sections of chapter 384, Code, 1939 (chapter 491, Code, 1946, including section 491.25 thereof), "to authorize perpetual existence, and fix the fees of corporations having such existence." The language just quoted is the substance of the title to chapter 225. Defendants contend chapter 225 so changed the law as to render inapplicable the provision of section 491.25 for purchase of stock voted against renewal of corporate existence, where such renewal is accomplished by amendment to the articles of incorporation.

Chapter 225, Acts 50th General Assembly, is too long to set out in full herein. Defendants rely principally upon two provisions thereof which they say authorize an entirely separate and distinct method of renewing a corporation to exist perpetually—by amendment to the articles—and where such method is followed there is no liability to purchase stock voted against renewal. The first of these provisions is the last sentence of section 4, chapter 225, which became the last sentence in the first paragraph of section 491.20, Codes, 1946, 1950, and 1954: "Corporations providing for perpetual existence by amendment to its articles shall, at the time of filing such amendment, pay to the secretary of state a fee of one hundred dollars together with a recording fee of twenty-five cents per page, and, for all authorized capital stock in excess of ten thousand dollars, an additional fee of one dollar ten cents per thousand."

The second provision of chapter 225, Acts 50th General Assembly, on which defendants rely is section 5 thereof which adds this to section 8364, Code, 1939 (section 491.24, Codes, 1946, 1950, and 1954): "provided however, that in addition to the power herein granted to incorporate for a period of years, corporations * * * may have perpetual existence by so providing in the articles of incorporation or by amendment thereto pursuant to section 8360."

Although chapter 225 may have left the law somewhat in doubt we are not persuaded, as defendants would have us believe, there is no liability, under Code section 491.25, of those voting for renewal of corporate existence to purchase the

stock voted against renewal where such action is accomplished by amendment to the articles.

These are some of the considerations that lead us to conclude, as the trial court did, stockholders voting for renewal of corporate existence are required by section 491.25 to purchase the stock voted against such renewal although such action is effected by amendment to the articles. As we have indicated, the general substance of this statutory requirement has been in effect since the Code of 1851. There is little doubt that before 1943, when chapter 225, Acts 50th General Assembly, took effect, this purchase requirement applied where renewal was accomplished by amendment to the articles. This is the clear effect of our decision in Lamb & Sons v. Dobson (1902), 117 Iowa 124, 127, 128, 90 N.W. 607. See also Morris v. The Broadview, Inc., 328 Ill. App. 267, 271, 65 N.E.2d 605, 608, which says, "Extension of the existence or life of a corporation is construed as an amendment of its charter [citing cases]."

If the Fiftieth General Assembly had intended chapter 225 to change the long-existing law requiring the purchase of minority stock where extension of corporate life is effected by amendment to the articles, it could easily have expressed such intent. We find no such expression in chapter 225. The effect of defendants' argument is that chapter 225 repeals by implication the purchase requirement of what is now Code section 491.25 where the renewal is accomplished by amendment to the articles. Certainly to adopt defendants' contention would nullify such requirement for all practical purposes. Obviously, substantially all renewals would be accomplished by amending the articles if liability to purchase stock voted against renewal would thereby be avoided.

Courts do not favor and will not uphold repeals by implication unless the intent to repeal clearly and unmistakably appears from the language used and such a holding is absolutely necessary. The rule has special application to important public statutes of long standing. Yarn v. City of Des Moines, 243 Iowa 991, 997, 54 N.W.2d 439, 442, and citations; Smaha v. Simmons, 245 Iowa 163, 168, 60 N.W.2d 100, 103.

It cannot be said an intent to repeal or abrogate the purchase requirement of Code section 491.25 clearly and unmis-

takably appears from chapter 225, Acts 50th General Assembly. The Act expressly states it is one to amend certain designated Code sections including, as we have said, *what is now section 491.25.* The first sentence of that section, heretofore quoted, containing the purchase requirement, as now worded, was first enacted as section 6 of chapter 225. The legislature would hardly have restated a sentence to include a provision it intended to abrogate. See citations last above and authorities therein cited.

■ We think the purpose of chapter 225 was, as its title states, to authorize corporations to provide for perpetual existence and to fix the fees of corporations having such existence rather than to establish a new method of extending or renewing corporate existence to which the purchase requirement of Code section 491.25 does not apply.

Section 491.25 does not provide the precise method for effecting a renewal of corporate existence. Certainly a common method—probably much the most common—is by amendment to the articles. See Lamb & Sons v. Dobson, supra, 117 Iowa 124, 127, 90 N.W. 607. See also Keetch v. Cordner, 90 Utah 423, 62 P.2d 273, 108 A. L. R. 52, 58, and annotations 59, 70. It would seem the only proper methods of renewing corporate existence are by the adoption of new articles or by amendment to the existing ones. This is indicated by the provision, heretofore quoted, added to Code section 491.24 by section 5, chapter 225, 50th General Assembly, that corporations "may have perpetual existence by so providing in the articles of incorporation or by amendment thereto pursuant to section 491.20."

Code section 491.5 contains the mandatory requirement that all articles of incorporation shall state the time of existence of the corporation. The amended and substituted articles here say the corporation shall exist for a period of twenty years from September 15, 1929. If the period so fixed is to be renewed it should be done by the adoption of new articles or by amendment to the old. The legislature must have contemplated that the renewal provided for by section 491.25 would be accomplished by one of these methods. It could hardly have intended the requirement for purchase of stock

voted against renewal would not apply where the method adopted is by amendment to the articles. Such action is nonetheless a renewal of the corporate existence within the meaning of section 491.25.

█ We think it is not material that the amendment to the articles approved at the meeting at which the renewal action was taken also changes the amount of indebtedness the corporation may incur. As we view it this change as to indebtedness does not in the least indicate there was no renewal of the corporate existence within section 491.25.

█ II. Defendants' second contention challenges the right of plaintiff Elsie E. Robbins, wife of plaintiff E. D. Robbins, to recover. Each owned 38 shares of stock. Elsie did not attend the stockholders' meeting of January 23, 1948, at which the renewal action was taken. Her husband voted her stock (together with his own) without any written proxy so to do. Defendants contend there was no legal vote of Elsie's stock against renewal such as renders them liable, under section 491.25, to purchase it. The trial court also held against this contention, found E. D. Robbins' voting of his wife's stock was a substantial compliance with the terms of the statute and that "to require a strictly technical performance of something like voting by written proxy * * * would seem to the court to be inequitable." We cannot agree with this holding.

The amended and substituted articles of incorporation provide, "At all meetings of the stockholders each stockholder shall be entitled to one vote for each share of stock held by him, which vote he may cast in person or by written proxy."

The only evidence we find that E. D. Robbins was authorized to vote his wife's stock is one answer of his wife and one of his. This is Elsie's testimony: "Q. Did you authorize your husband to cast your vote on those 38 shares against the plan to renew the corporation on January 23, 1948? Mr. Tobin: Objected to as calling for an opinion and legal conclusion. A. Yes."

Mr. Robbins' evidence is: "Q. At the meeting on January 23, 1948, did you have a personal authorization from your wife to vote her stock? Mr. Tobin: Objected to as leading and improper. A. Yes." He then said such authorization was

given in 1946. When reminded that his wife did not acquire her stock until February 27, 1947, Robbins testified such authorization must have been in that year.

The objection to the above question asked Elsie was good. There may be some doubt as to the sufficiency of the objection to the question asked her husband. In our view however it is of little consequence that Mrs. Robbins may have authorized her husband to vote her stock. There is no evidence of any written proxy.

Plaintiffs' action is based solely on the requirement of Section 491.25 that defendants purchase the stock voted against renewal. At least in the absence of any waiver or estoppel which may be invoked against defendants we think this clearly implies stock that is legally voted against renewal. Mrs. Robbins' stock was not so voted.

Unless the articles of incorporation or some statute provides otherwise, shareowners must vote their own stock in corporate meetings. At common law there was no right to vote by written proxy. 18 C. J. S., Corporations, section 550a; 13 Am. Jur., Corporations, sections 489, 496; Schwemer v. Fry, 212 Wis. 88, 249 N.W. 62, 65, 90 A. L. R. 308; Dennistoun v. Davis, 179 Minn. 373, 229 N.W. 353, 355. See also McKee v. Home Savings & Trust Co., 122 Iowa 731, 736, 98 N.W. 609. Here, as stated, the articles authorize voting by written proxy.

It is true, as plaintiffs argue, there was no objection raised at the meeting of January 23, 1948, to E. D. Robbins' voting his wife's stock. Mainly because of this fact plaintiffs contend defendants waived any irregularity in connection with such voting and, in effect, are estopped from so asserting. The court held against this contention and we agree with the holding. In the first place plaintiffs do not plead any waiver or estoppel but allege in their petition "that plaintiffs E. D. Robbins and Elsie E. Robbins each voted 38 shares against such renewal."

With certain exceptions, not here applicable, it is well settled in Iowa and most jurisdictions that waiver or estoppel, if relied upon, must be pleaded. Mensinger v. Hass, 240 Iowa 71, 79, 35 N.W.2d 461, 465, and citations; Commercial Stand-

ard Ins. Co. v. Remay, 58 Idaho 302, 72 P.2d 859, 120 A. L. R. 1, and extended annotation 8; 56 Am. Jur., Waiver, section 18.

Further, the evidence does not justify a finding these defendants waived, or are estopped from urging, illegality in voting Mrs. Robbins' stock.

Plaintiffs are asserting a cause of action created by statute. They must bring themselves within its terms. Unless they do so they have no cause of action. The statute imposes liability upon defendants only to owners of stock voted against renewal—as we believe, legally so voted. Since Mrs. Robbins has not brought herself within the terms of the statute she is not entitled to recover.

This from Alexander v. Crosby (Ladd, J.), 143 Iowa 50, 54, 119 N.W. 717, 718, is applicable here: "A statute creating a liability which did not exist before ought not to be so extended as to include others than those designated or fairly within its terms." To like effect is 82 C. J. S., Statutes, section 394; 50 Am. Jur., Statutes, section 587, page 584 (" * * * where a right is given by statute, only those to whom the right is in terms given may avail themselves of its benefits.").

Authorities more nearly in point on the facts which support the conclusion reached in this division include Friedman v. Booth Fisheries Corp., 28 Del. Ch. 211, 39 A.2d 761; In re Northeastern Water Co., 28 Del. Ch. 139, 38 A.2d 918, 923, and citation; In re Universal Pictures Co., Inc., 28 Del. Ch. 72, 37 A.2d 615, 621; Johnson v. C. Brigham Co., 126 Maine 108, 136 A. 456; Klein v. The United Theaters Co., 148 Ohio St. 306, 74 N.E.2d 319; Era Co. v. Pittsburgh Consol. Coal Co., 355 Pa. 219, 220, 49 A.2d 342, 343 (" 'Where a remedy or method of procedure is provided by an Act, its provisions shall be strictly pursued and exclusively applied.' ").

See also Barnett v. Philadelphia Market Co., 218 Pa. 649, 67 A. 912. Lewis v. Corroon & Reynolds Corp., 30 Del. Ch. 200, 57 A.2d 632, 637, supports our view that stock voted against renewal must be legally so voted.

We think the holding Mrs. Robbins is not entitled to recover is not inconsistent with our decision in Rossing v. State Bank, 181 Iowa 1013, 1018, 165 N.W. 254, cited by plaintiffs, which approves voting by proxy where the articles seemed to

recognize that manner of voting, according to usage it was permitted and not objected to, and the stockholders who asserted illegality in the voting themselves voted proxies.

 III. Code section 491.25, heretofore quoted, requires the purchase "at its real value" of the stock voted against renewal. The trial court found such value was $200 per share as of January 23, 1948. Defendants contend this is too high.

On this aspect of the case the main dispute is over the meaning of "real value." Defendants argue it is the amount for which the stock was sold in a fair market on dates near January 23, 1948. While they do not quite say so directly, they maintain real value is substantially the same as market value. Plaintiffs, however, contend real value is not the equivalent of market value but is to be determined upon a consideration of all relevant factors including market value if any. The trial court so held, we believe correctly.

There are a number of decisions as to the value to be placed on stock of minority shareholders under statutes generally analogous to section 491.25 so far as the question of value is concerned. In most of the cases we find there has been a merger rather than an extension of corporate existence. The authorities substantially agree in rejecting the argument that such terms as value, or actual, true, fair, or real value of minority stock mean market value. Although courts are slow to define such terms, in most instances they are held to mean intrinsic value, determined from a consideration of every relevant factor bearing on the question of value.

All or several of these factors are frequently mentioned as bearing upon the value of corporate stock—the rate of dividends paid, the security afforded that dividends will be regularly paid, possibility that dividends will be increased or diminished, the size of the accumulated surplus applicable to payment of dividends, record of the corporation, its prospects for the future, selling price of stocks of like character, value of its assets, book values, market conditions, and reputation of the corporation. It is unwise to attempt to state every factor that may bear on value of stock in a particular case.

Authorities which support the above views include Riemenschneider v. Riemenschneider, 239 Iowa 617, 631, 30 N.W.2d

769, 776, 32 N.W.2d 68, quoting from 9 Fletcher on Corporations, Perm. Ed., section 4657; Chicago Corporation v. Munds, 20 Del. Ch. 142, 172 A. 452; Ahlenius v. Bunn & Humphreys, Inc., 358 Ill. 155, 192 N.E. 824, 95 A. L. R. 913, 920, 921, and annotation 922; Republic Finance & Inv. Co. v. Fenstermaker, 211 Ind. 251, 6 N.E.2d 541; Cole v. Wells, 224 Mass. 504, 113 N.E. 189, 191; In re Fulton, 257 N.Y. 487, 178 N.E. 766, 79 A. L. R. 608, 612, 613; Roessler v. Security Savings & Loan Co., 147 Ohio St. 480, 72 N.E.2d 259; Adams v. United States Distributing Corp., 184 Va. 134, 34 S.E.2d 244, 162 A. L. R. 1227, 1234; 13 Fletcher Cyc. Corporations, Perm. Ed., section 5899, page 256; 19 C. J. S., Corporations, section 1615b, page 1378; annotation 174 A. L. R. 960, 962.

Several of the cited authorities and others point out that market value is an unsatisfactory test of the intrinsic value of corporate stock. One reason for this is that where there is a market for stock the prices frequently vary widely from day to day although there is little if any change in its true value. In this class of cases courts are reluctant to accept the gyrations of the stock market as a conclusive measure of value. That the price for which stock sells is an unsatisfactory test of its value is indicated here by the fact this Shellsburg stock sold in 1945 (to the same man or his wife) at prices which varied from $50 to $125 per share. Of course there is frequently little if any market for stock in such a small corporation as this.

If the legislature intended real value to mean market value it seems probable it would have employed the latter term which is in much more common use than the term it did use.

 If, as we hold, the trial court applied the proper meaning to "real value" as found in section 491.25, defendants have no just cause for complaint at the finding such value was $200 per share. Two qualified expert witnesses for plaintiffs fix its real value at the time of the renewal at almost $300 per share. The trial court did not accept this figure because under the evidence the stock could not be sold for anything like this amount and a consideration of all relevant factors led to the conclusion the value per share was $200.

 IV. Plaintiffs, who have not appealed, contend the

trial court erred in not fixing the real value of the stock at between $236 and $255 per share and ask us to fix such value at a sum higher than $200. Although plaintiffs are entitled to argue, in defense of the decree, the value should have been fixed at more than $200 per share they may not have a more favorable decision here without appealing from the trial court's decree. Board of Directors v. Blakesley, 240 Iowa 910, 919, 36 N.W.2d 751, 756; Scott v. City of Waterloo, 223 Iowa 1169, 1171, 274 N.W. 897; Johnson v. Foust, 158 Iowa 195, 198, 139 N.W. 451; Jack v. Teegarden, 151 Neb. 309, 37 N.W.2d 387, 390; Bickford v. Dillon, 321 Mass. 82, 71 N.E.2d 611, 612; 3 Am. Jur., Appeal and Error, sections 865, 866. See also 5 C. J. S., Appeal and Error, section 1498b, pages 169, 170.

Plaintiffs also (without appealing) ask us to render a declaratory judgment *against the corporation* that they are entitled to $1975, the total amount of dividend checks issued by the corporation on the stock held by the plaintiffs between the time of the renewal action and the trial. It is also a sufficient answer to this contention that plaintiffs have not appealed. See authorities last above. Further, no issue was raised regarding these dividends. No such relief was sought as plaintiffs now ask us to decree. Nor is the corporation against which declaratory relief is now asked a party to the action.

The decree is affirmed insofar as it is in favor of plaintiffs E. D. Robbins and A. C. Shipley. Insofar as it is in favor of plaintiff Elsie E. Robbins it is reversed in accordance with our holding in Division II hereof. Two thirds the costs are taxed to defendants, one third to plaintiff Elsie E. Robbins.—Affirmed in part and reversed in part.

All JUSTICES concur.