**ELY, INC., f/k/a Microfuel Corporation, Plaintiff–Appellant,**

v.

**Allen C. WILEY, Defendant–Appellee.**

No. 94–1535.

Court of Appeals of Iowa.

Feb. 2, 1996.

Leonard T. Strand, Stephen J. Holtman, and Richard G. Hileman, Jr. of Simmons, Perrine, Albright & Ellwood, P.L.C., Cedar Rapids, and Donald G. Thompson of Bradley & Riley, P.C., Cedar Rapids, for appellant.

Mark E. Liabo and Tom Riley of the Tom Riley Law Firm, P.C., Cedar Rapids, for appellee.

Heard by SACKETT, P.J., HABHAB, J., and SCHLEGEL, Senior Judge.*

SACKETT, Presiding Judge.

This appeal questions the district court's valuation of a minority dissenting shareholder interest. Plaintiff-appellant Ely, Inc., f/k/a MicroFuel Corporation, appeals a district court decision in defendant-appellee Allen C. Wiley's shareholder dissenter's action seeking valuation of defendant's minority interest in plaintiff corporation. Plaintiff contends the valuation placed on the stock by the district court was too high. Plaintiff contends the trial court erred in: (1) not considering the sale price and refusing to consider the valuation opinion of MicroFuel's

* Senior judge from the Iowa Court of Appeals serving on this court by order of the Iowa Su-

expert witness, and (2) finding MicroFuel's stock was worth forty cents per share immediately prior to the Fuller transaction. MicroFuel contends it is entitled to entry of judgment in its favor as a matter of law. We reverse and remand. We do not retain jurisdiction.

Defendant invented and obtained patents on a process where coal and other substances are ground into fine powder and used to reduce pollution in coal-fired power plants. The process was called MicroMill.

Defendant formed C.P. Coal Mills, Inc., in 1985 to market the process. Defendant sold eighty percent of the stock in that company. The purchaser lost interest and defendant sought additional investors to repurchase the company. A new company, MicroFuel Corporation, was formed. IES Industries, Midwest Resources, and Arete Ventures, a venture capital investment group, bought shares at twenty-five cents per share in March 1988. Defendant was named an officer and member of the board of directors. IES, Midwest, and Arete continued to purchase stock in the company. By 1990, IES had invested more than $2 million in MicroFuel.

In the summer of 1991, MicroFuel needed additional capital to develop MicroMill. Except for IES, all the other shareholders declined to invest additional funds. By August 1991, MicroFuel only had cash reserves to operate one month. MicroFuel issued a secured promissory note to IES in exchange for a $600,000 line of credit. Under the terms of the note, all sums borrowed by MicroFuel were due and owing to IES on April 1, 1992. By April 1992, MicroFuel owed IES more than $350,000. IES did not seek collection on the note.

It was decided to find a new partner to invest in the company. Fuller offered to purchase MicroFuel in its entirety for $750,-000 cash plus royalties not to exceed $6.5 million on MicroMill sales over the next seven years.

preme Court.

Defendant made an offer identical to Fuller's. On September 2, 1992, MicroFuel's board voted to submit both offers to the shareholders without recommendation. That same day, the board held a special meeting to consider the two proposals plus a third offer from the Tennessee Valley Authority. The Tennessee Valley Authority had discussed the possibility of placing MicroFuel in Clean Coal IV, a federal program. The Tennessee Valley Authority believed the Micro-Mill technology could be used to help utility companies burn coal more efficiently and cleanly. The program could have provided MicroFuel with additional capital. If the technology were successful, the Tennessee Valley Authority could allegedly guarantee revenues to MicroFuel of between $150 million and $1.2 billion. The Tennessee Valley Authority was willing to invest $500,000 in MicroFuel in exchange for a one percent interest in MicroFuel's patents and a four percent royalty on MicroMill hardware sales within the domestic utility industry. This licensing agreement would have eliminated MicroFuel's debt to IES and left it with some working capital. Defendant told the board MicroFuel would be worth between $14.5 million and $19.2 million if the Tennessee Valley Authority's offer was accepted.

The board voted to accept Fuller's proposal. The board rationalized Fuller, a large company with experience and resources, was more likely than defendant to have greater sales and generate more royalties. Defendant voted his twelve percent of the shares against the Fuller proposal.

Defendant, as a dissenter to the Fuller sale, was entitled to have MicroFuel purchase his shares at their fair market value immediately preceding the transaction. MicroFuel tendered defendant $24,200, the amount the board determined represented the fair value of defendant's twelve percent share of stock. Defendant claimed MicroFuel was worth more than $15 million immediately prior to the Fuller transaction. Because the parties disagreed on the value of defendant's shares, MicroFuel filed the present action to obtain a judicial appraisal of those shares.

The district court heard the evidence, including the appraisers called as witnesses by both sides.

The district court rejected MicroFuel's expert's method of valuation finding he based his value only on the transaction itself, not the value before the transaction. The court accepted the valuation proposed by defendant's expert at forty cents per share, for a total fair market value of $377,600. From that amount, the court deducted the $24,200 already paid. Judgment was entered against MicroFuel, now known as plaintiff Ely, Inc., for $353,400 plus interest. Plaintiff appeals.

Plaintiff argues the district court erred in refusing to consider the valuation opinion of MicroFuel's expert, Mr. Much. Plaintiff contends the actual terms of the Fuller transaction were relevant to the determination of the fair market value of defendant's stock prior to the transaction. Iowa Code section 490.1301(3) (1993) provides the fair value of stock is:

> the value of the share[s] immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable.

Iowa Code § 490.1301(3) (1993).

Plaintiff maintains Iowa Code section 490.1301(3) does not state the actual transaction price must be ignored in determining fair value and advances the district court erred in doing so. Plaintiff also argues the court erred in concluding MicroFuel was compelled to sell to Fuller and thus the price did not reflect an arms-length transaction.

The trial court specifically found with reference to the testimony of plaintiff's expert, Much:

> This court … finds Mr. Much's testimony to be unreliable for a couple of reasons. The first and most important is that he was to determine the fair value of the stock before the corporate transaction, yet he used the transaction itself to determine the value. *To determine fair value one must basically ignore the corporate transaction since the fair value occurs immedi-*

*ately before said action.* (Emphasis supplied).

The court further found:

> Having found Mr. Much's testimony and opinion cannot be relied on because he based his value only on the transaction itself, not before the transaction,....

The court then adopted the valuation of defendant's expert, Kramer, in its entirety.

The trial court, in arriving at its conclusion, considered the Iowa law to dictate the transaction itself must not be considered. Plaintiff argues this is not the law. Defendant says it is. We do not find the specific question to have been addressed by the Iowa courts. However, we find guidance in reaching our decision in *Sieg Co. v. Kelly,* 512 N.W.2d 275 (Iowa 1994), a case addressing valuation of a dissenter's stock under Iowa Code sections 490.1301(3), 490.1330(1), and 490.1330(5)(a).

The court, in *Sieg,* discusses at length the difficulties in valuations and the fact there is no perfect formula for arriving at fair value and says it recognizes three approaches to this issue of valuation: (1) market value, (2) investment value, and (3) net asset value. *Sieg,* 512 N.W.2d at 278; *see also Richardson v. Palmer Broadcasting Co.,* 353 N.W.2d 374, 378 (Iowa 1984). In *Sieg,* the court goes on to state the trial court should consider the approaches as relevant factors rather than essential components, and other factors trial courts should consider include the rate of dividends paid, the security afforded that dividends will be regularly paid, the possibility dividends will be increased or diminished, the size of accumulated surplus applicable to the payment of dividends, the record of the corporation, its prospects for the future, the selling price of stocks of like character, the value of its assets, book values, market conditions, the reputation of the corporation, and *all relevant factors that may influence the valuation.* (Emphasis supplied). *Sieg,* 512 N.W.2d at 278–79; *see also Robbins v. Beatty,* 246 Iowa 80, 91, 67 N.W.2d 12, 18 (1954).

The legislature did not say the actual transaction price be ignored in determining fair market value under Iowa Code section 490.1301(3) (1993). It only said appreciation or depreciation in anticipation of the sale price be excluded. It is the effect of the anticipated transaction that should be excluded. The trial court should not have excluded from its consideration Much's testimony because he did not ignore the transaction in his assessment of value. The transaction is a relevant factor. *Id.* It is only the appreciation or depreciation in anticipation of the sale or the effect of the anticipation on the price that the legislature dictated be excluded in establishing value.

The record has been made. We remand to the trial court to reconsider applying the proper legal standard. We do not suggest what the answer may be.

Plaintiff also contends the district court's conclusion defendant's stock was valued at forty cents per share is not supported by the record. Plaintiff argues the $24,200 paid to defendant was the correct price of his shares, taking twelve percent of the Fuller purchase price of $750,000. Plaintiff maintains it should be granted a new trial. We reject this argument.

Reversed and remanded. We do not retain jurisdiction. Costs on appeal are taxed to defendant.

**REVERSED AND REMANDED.**