HENRY W. TERRELL et al., Appellants, v. RINGGOLD COUNTY MUTUAL TELEPHONE COMPANY et al., Appellees.

No. 44518.

DECEMBER 13, 1938.

REHEARING DENIED APRIL 7, 1939.

L. W. Laughlin, and John E. Holmes, for appellants.

Lewis & Lewis, for appellees.

RICHARDS, J.—In their petition plaintiffs allege they are minority stockholders of the Ringgold County Mutual Telephone Company, an Iowa corporation. The petition designates the corporation, its officers and board of directors, and certain of the stockholders other than plaintiffs, as defendants. Further allegations of the petition are: that the time of the termination of the corporation as fixed by its articles was August 6, 1937; that at a special election of the stockholders, held on September 23, 1937, the defendant-stockholders voted for renewal of the franchise of the corporation, and plaintiff-stockholders objected to and voted against such renewal; that the president and secretary of the corporation executed a certificate purporting to show the proceedings had at the special election and the results thereof, and on October 20, 1937, filed same with the secretary of state; that thereupon that official issued to the corporation a certificate for the renewal of its corporate franchise for another period of 20 years from August 6, 1937; that by virtue of section 8365, Code 1935, and the matters alleged in the petition, the assets of the corporation became affected with an equitable right in favor of plaintiffs, and the relationship of purchaser and seller or debtor and creditor arose between the stockholders of the corpo-

ration voting for such renewal and plaintiff-stockholders; that defendant-stockholders who voted for said renewal became liable to plaintiff-stockholders for the real value of the shares of stock held by plaintiffs as of the date of the renewal action with interest at eight per cent; that the assets of the corporation became a trust fund for the security and payment of the real value of the shares held by plaintiffs, and for the creditors of the corporation; that plaintiffs are entitled to have the real value of their shares determined as of the date of said renewal action, and to have the amount thereof declared a first lien upon the assets of the corporation and to have and receive from defendant stockholders the amounts determined to be the real value of plaintiffs' respective shares with eight per cent interest. Judgment was demanded by plaintiffs against the defendant-stockholders for the sum of $300.00 per share as the real value of each share of the stock held by plaintiffs, with eight per cent interest from September 23, 1937, and it was prayed that such judgment be declared to be a first lien on the assets of the corporation, and that a receiver be appointed. Other relief of an equity nature was sought. Defendants filed a motion to strike and dismiss the petition, in ruling on which the court ordered dismissal of the action. Plaintiffs electing to stand on their pleading judgment was rendered against them. Therefrom they have appealed.

The statute, pled in the petition, pertaining to renewal of corporations, is in these words:

"8365. Renewal—conditions. In either case they may be renewed from time to time for the same or shorter periods, within three months before or after the time for the termination thereof, if a majority of the votes cast at any regular election, or special election called for that purpose, be in favor of such renewal, and if those voting for such renewal will purchase at its real value the stock voted against such renewal. Stockholders voting for renewal shall have three years from the date such action for renewal was taken in which to purchase the stock voted against such renewal, which purchase price shall bear interest at eight per cent per annum from the date of such renewal action until paid, and the provisions of this act [45G.A, ch 143] shall not apply to any renewal voted before this act becomes operative."

The general substance of the first sentence of this section

8365 appeared in our statutes as early as the Code of 1851, though subsequently amendments were enacted. In 1933 the 45th General Assembly amended the section as it then stood by adding what is now the second sentence of the section as above quoted.

One ground of the motion to dismiss the action, as against the defendant-stockholders voting for the renewal, was that any such action would not be maintainable within a period of three years from and after September 23, 1937. This portion of the motion appears to have been properly sustained. The question need not here be discussed whether or not the two things pleaded, i. e., the voting by defendant-stockholders for the renewal, and the issuance of the certificate for renewal of the corporation, ipso facto created a present personal obligation on part of such defendant-stockholders to purchase the stock voted against the renewal. For regardless of what may be the answer to that question the terms of the amendment of 1933 in any event effected an extension to September 23, 1940, of the time for making payment. We are construing this statute as we find it.

In appellants' argument is a brief discussion of the question whether the amendment of 1933, and the section as amended, are in contravention of section 1 of the 14th Amendment to the Federal Constitution and of that clause of section 9 of Article 1 of the Iowa Constitution relating to the taking of property without due process of law. But no question respecting the constitutionality of the amendment or of the statute as amended appears to have been raised in the pleadings or issues as the case was tried in the district court. Consequently we refrain from considering the question on this appeal.

The motion to dismiss the action against the corporation was also properly sustained. We fail to find in section 8365 an express creating of a liability on the part of the corporation to purchase plaintiffs' stock. Nor do we find in this statute any express provision that the assets of the corporation became affected with an equitable right on part of plaintiff-stockholders to recover the value of their stock from the corporation's assets. Plaintiff-stockholders say in argument that a legislative intent to impress the assets of the corporation in the manner they suggest should be inferred, in order that the amendment and the statute as amended may be saved from impeachment on account

998

of its alleged unconstitutionality. The difficulty with considering appellants' theory in this respect is what has been already mentioned, the constitutional question is not before us.

In the petition are allegations that plaintiffs have demanded of the officers and directors of the corporation, and have been refused, the right to inspect the corporation's books and records, and the right to obtain a list of the stockholders and to ascertain the indebtedness of the corporation on the date of the renewal action; that the officers and directors have neither posted nor kept posted a statement of the amount of the company indebtedness or a list of the stockholders as required by law. Plaintiffs do not make claim that their petition in this case partakes of the nature of a mandamus action, to compel the doing of any of these things, nor do we think it does, and the dismissal of their action was without prejudice to instituting appropriate proceedings with reference to these complaints. Finding no error the decree from which the appeal was taken is affirmed.—Affirmed.

SAGER, C. J., and STIGER, HAMILTON, DONEGAN, KINTZINGER, and MILLER, JJ., concur.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority and therefore respectfully dissent.

The relief plaintiffs sought was that the real value of the shares of capital stock be ascertained; that they be entitled to judgment for that amount, plus interest at eight per cent from September 23, 1937; that decree be entered, declaring all of the property and assets of the corporation as a trust fund for the security and payment of the real value of each share of the capital stock held by them, as now ascertained, together with interest at eight per cent; and that a receiver be appointed to take charge of all of the property, assets and books of the corporation; and for such other equitable relief which might seem just and proper to a court of equity.

It is held in the majority opinion, as I read it, that before the dissenting stockholders can have any relief, or before equity will give them any protection, they must wait for three long years.

Prior to the change made by the Legislature in 1933, every stockholder of an Iowa corporation for pecuniary profit, as an

essential element of his contract, had the right to withdraw or retire the capital which he had invested at the termination of the corporate life or period for which the corporation was organized. If the majority of the stockholders favored a renewal of the life of the corporation, any stockholder had the election to oppose such renewal, and in the event that the majority of the stockholders voted in favor of renewing the corporate charter it could only be done by purchasing at its real value the stock voted against such renewal.

The United States Supreme Court in Apsey v. Kimball, 221 U. S. 514, 31 S. Ct. 695, 55 L. Ed. 834, under a somewhat similar law of Congress in connection with the extension of the corporate existence of a National Bank, held that when the election is made by the majority to extend the corporate charter and by the dissenting minority stockholders to withdraw, the latter thereupon ceases to be a shareholder in the corporation.

And in the case of Ervin v. Oregon Ry. & Nav. Co., C. C., 27 Fed. Rep. 625, the court held that the stockholder is equitably at least a beneficial joint owner of the corporate property, and that the majority cannot appropriate to itself the minority's stock or property.

Under the majority opinion the corporation as a legal entity would acquire by the renewal an extension of its corporate life. The corporation would continue to own all of its assets and property. Under the United States Supreme Court case, above cited, the minority stockholder would cease to be a shareholder in the corporation, and yet, under the majority opinion the minority stockholder could not require that the purchase of his stock be consummated until three years after the date such action for renewal was taken; could not even have the fair value of his stock fixed; could not have it adjudicated a lien against the corporate property; could not have a receiver appointed to protect the interest he has in the property of the corporation. In other words the minority stockholders would have nothing but a deferred claim, about which they could do nothing for a period of three years. He would not even know what the purchase price was to be, and the means of determining the real value at the end of three years may very easily be difficult, if not impossible, to ascertain.

The statute provides, "which purchase price shall bear inter-

est at eight per cent per annum from the date of such renewal action until paid.''

The majority opinion holds that the value of the stock cannot be determined until at the end of the three years. When the Legislature provided in the statute that eight per cent interest shall be paid upon the purchase price of the stock which is not renewed, it meant the value of that stock had to be ascertained as of the date of the renewal and not three years later, for interest runs only upon a fixed amount, and if the amount was not fixed it would be impossible to figure the interest until after the end of the three years. This, to me, seems extremely unreasonable, and unfair, and I cannot believe the Legislature had any such thought in mind in the enactment of the statute under consideration. To give the majority of the stockholders a right to run the corporation, without any consideration whatever of the rights and interests of the minority stockholders; to turn over to them the assets of the corporation, to direct how it shall be managed and operated; to give them a right to dissolve the corporation a week or a month or a year afterwards, as the majority would, with all of the assets, as soon as the creditors are paid, is an unreasonable interpretation to place upon this statute. As I interpret the statute the language requires a consummated purchase before the renewal. There can be no renewal until the value of the stock of the minority stockholders voting against the renewal is fixed and their rights and interest are protected. Under the majority opinion those voting for renewal have a three years' option to purchase the stock of the dissenters. A liability at least must be conceded to exist before renewal can be completed. The dissenting stockholders once had the right to share the capital equally with the renewal stockholders upon distribution. Is that right now destroyed altho there has been no purchase of their stock?' How can the renewal be an accomplished fact while the purchase price remains undetermined? Obviously, there can be no purchase without a fixed price, either by agreement of the parties to the purchase or by some machinery provided by law. Certainly, a court of equity will not permit the assets of the dissenting stockholders to be appropriated by those seeking to renew the charter, for a period of three years, without giving the dissenting stockholders any rights whatever. The operation and the management of the corporation would be in the hands of the majority. The assets could be dissipated during

that three-year period, and there would be no liability, and no right of a court of equity to intercede, until the three-year period has elapsed, according to the majority opinion. If the buyer could be given three years to purchase, and in the meantime would own the subject of the purchase, then he could be given thirty years as well.

The constitutionality of this statute is not before us. All that we are confronted with is the construction of the statute. The only fair interpretation, as I see it, is that the minority stockholder is entitled to have the fair value of his stock fixed so that it may draw interest at eight per cent as the statute provides; that the minority stockholder is entitled to have the amount due him from the majority stockholder declared to be a lien against the assets of the corporation, and a receiver appointed so that the property and assets of the corporation may be conserved and the rights of the minority stockholders preserved.

I would reverse the district court, and order decree in compliance with the views herein set out.

I am authorized to state that Justice ANDERSON joins in this dissent.