STATE OF IOWA ex rel. E. D. ROBBINS et al., plaintiffs, v. SHELLS-BURG GRAIN & LUMBER COMPANY, a corporation, et al., appellees; DORTHA M. ROCK et al., intervenor-appellants.

No. 48034.

(Reported in 53 N.W.2d 143)

MAY 6, 1952.

Edward F. O'Connor, of Vinton, and Edward L. O'Connor, of Iowa City, for intervenor-appellants.

Tobin & Bordewick, of Vinton, Simmons, Perrine, Albright, Ellwood & Neff, of Cedar Rapids, and Robert L. Larson, Attorney General, for appellees.

HAYS, J.—This is an appeal from a judgment dismissing intervenors' petition of intervention, upon motion of all defendants except Melvin D. Synhorst, as Secretary of State, State of Iowa. The proceedings is an action in the nature of quo warranto. The trial court held nothing of a public interest was alleged in the petition such as to sustain such a proceeding. Intervenors have appealed from a judgment entered under rule 86, R. C. P.

The pleadings are rather lengthy and present many questions which are not of concern here. As far as material, the following matters are alleged: The defendant Shellsburg Grain & Lumber Company is an Iowa corporation, organized for pecuniary profit on September 15, 1909; its charter was renewed in 1929 and would expire September 15, 1949. All other defendants except Melvin D. Synhorst, as Secretary of State, are stockholders in, and some directors of, the corporation. They are hereinafter designated as majority stockholders. Plaintiffs and intervenors are likewise stockholders and will be referred to as

minority stockholders. On January 23, 1948, at the annual meeting of the corporation, a resolution to amend the articles. of incorporation to give it perpetual existence was adopted by a vote of 428 to 79. Six hundred shares of stock were outstanding. Plaintiffs' shares were represented and voted against renewal. Intervenors' shares were not represented or voted at the annual meeting, but it was submitted in the trial court on the theory that they were voted against the renewal and we adopt the same theory. The majority shareholders voted for the renewal. A certificate of renewal was issued to the corporation on January 26, 1948, and it has continued to function as a corporation. Although demand has been made upon the majority shareholders that they pay to the minority shareholders the real value of their stock, such has been ignored, and in April 1951 this action was commenced. The prayer of this petition is that the corporate charter be declared forfeited and that trustees be appointed to liquidate the assets. Judgment against the majority stockholders for the real value of the intervenors' shares of stock is also asked, together with other equitable relief. The issue presented by this appeal goes only to the prayer that the corporate charter be declared forfeited.

I. Quo warranto or an action in the nature of quo warranto is a special proceedings and strictly statutory in character. It is available only where the act complained of is of a public interest and may not be invoked for the redress of a private right or grievance. State ex rel. Higby v. The Higby Co., 130 Iowa 69, 106 N.W. 382, 114 Am. St. Rep. 409; State ex rel. Maley v. Civic Action Committee, 238 Iowa 851, 28 N.W.2d 467; 74 C. J. S., Quo Warranto, sections 6 and 14.

II. Rule 299, R. C. P., provides:

"A civil action in the nature of quo warranto, triable by equitable proceedings, may be brought in the name of the state against any defendant who is: * * *

"(c) Acting as a corporation in Iowa without being authorized by law so to act; or

"(d) A corporation exercising powers not conferred by law, or doing or omitting acts which work a forfeiture of its corporate rights or privileges.* * *."

If appellants are to maintain this action it must be done under either (c) or (d) above-quoted.

The action is predicated upon section 491.25, Code of 1946, which states: "Corporations * * * may be renewed * * * if a majority of the votes cast * * * be in favor of such renewal, *and if those voting for such renewal will purchase at its real value the stock voted against such renewal.* Stockholders voting for renewal shall have three years from the date such action for renewal was taken in which to purchase the stock voted against such renewal, which purchase price shall bear interest at eight per cent per annum from the date of such renewal action until paid * * *." (Italics ours.)

Appellants assert that a failure to comply with that provision of the statute which we have italicized brings the corporation within the provisions of rule 299(c) or (d) above-quoted.

This statute has been before this court at least once, and, while the exact question presented here appears to be of a first impression, one phase thereof has been definitely determined, and against appellants' contention.

In Terrell v. Ringgold County Mut. Tel. Co., 225 Iowa 994, 282 N.W. 702, which was an action in equity asking for a judgment in favor of the minority against the majority stockholders and for a receiver under section 491.25, we held the statute created no duty upon the part of the corporation, as such, to purchase the dissenters' shares of stock. See also Melsha v. Tribune Pub. Co., 243 Iowa 350, 51 N.W.2d 425. Furthermore, the act or failure to act complained of by appellants is not a statutory ground for the forfeiture of a corporate charter under section 491.42, Code of 1946. The action may not be based upon rule 299(d).

III. The real question presented is whether the statute creates a condition the performance of which is vital to continued corporate life. No one questions the legality of the corporation up to September 15, 1949. Appellants contend that the duty to purchase is a condition to a valid renewal, a failure of which nullifies the same.

The portion of section 491.25, italicized above, has been in substance the law of this state since the Code of 1851. In 1933, by chapter 143, section 1, Acts of Forty-fifth General Assembly,

the last sentence of the statute (section 8365, Code of 1931, now 491.25) as above-quoted, was added. Prior thereto, though never construed by the courts, the provision requiring purchase of a dissenter's stock was interpreted as a condition precedent to a renewal, at least to the extent that a certificate of renewal might be refused until the purchase price was paid or a bond given to secure the same. Attorney General's Opinions, 1919–1920, page 448; 1930, page 190. Whether this construction be sound or not we do not determine. By the amendment in 1933, whereby the legislature added the three-year provision, above-quoted, any question of a condition precedent was clearly eliminated. Does it create a condition subsequent? We think not.

It is true, as argued by appellants, that the object of the purchase clause in the statute is to protect a minority stockholder against roughshod tactics upon the part of a majority group. This is recognized, at least inferentially, in the Terrell case, supra, to the extent of a right to maintain an action for the real value of the stock. Whether the refusal in the Terrell case to appoint a receiver during the three-year period of grace granted by the 1933 amendment was correct, we are not called upon to determine; neither do we determine the extent or nature of the liability created by a vote for a renewal. Those are matters of a purely private right between the two groups of stockholders to be determined in a proper proceedings.

It is our judgment that the amendment in 1933 was enacted to protect the majority group in voting for a renewal of the corporate charter. It gave to them a three-year period of grace within which to arrange for payment of the real value of the dissenters' stock, without being harassed by judgments and executions. It certainly was never the intention of the legislature to permit a renewal of the charter and the issuance of a certificate of renewal at the time of the vote to renew, only to have it abruptly terminated by the failure upon the part of the majority stockholders to meet a personal obligation. If thereby the corporate life of the corporation would be in jeopardy it could have been easily so provided, as was done in the case of a corporate merger or consolidation. Sections 491.101–491.113, Code of 1950.

We are further strengthened in our view by reading section 491.25 in conjunction with 491.26. In addition to the quote of 491.25, supra, that section states: "Corporations * * * may be renewed from time to time * * * at any regular election, or special election called for that purpose, *at any time during the corporate life* or within three months after the termination thereof * * *." (Italics added.) Section 491.26 provides: "Such renewal shall date from the expiration of the corporate period which it succeeds." In the instant case the renewal dates from September 15, 1949, although the renewal action was taken January 23, 1948. Assume that in 1940 it was voted to renew this corporation; such would be effective only upon the expiration of the existing charter, i. e., September 15, 1949. The duty of the majority stockholders to purchase the minority stock arises as of the date of the renewal action and bears eight per cent interest therefrom. Under appellants' theory, three years thereafter, there being no payment made, the charter is forfeited—forfeited under the assumed facts in 1943, although the renewal would not become effective until 1949.

Forfeiture of a corporate charter is a harsh and serious procedure and only where it appears that public interest demands it should it be granted in the absence of a plain statutory requirement. Irrespective of what rights appellants may have under section 491.25, under the facts set forth in their petition no matter of public concern is alleged and they may not resort to an action in the nature of quo warranto. The judgment of the trial court is correct and should be affirmed.— Affirmed.

All JUSTICES concur.