FRED W. WOODWARD AND ELSIE M. WOODWARD, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

F. R. WOODWARD AND M. JEANNE WOODWARD, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4363–65, 4364–65.   Filed January 23, 1968.

*Donald P. Cooney*, for the petitioners.
*Ronald M. Frykberg*, for the respondent.

**OPINION**

TIETJENS, *Judge:* These consolidated cases involve deficiencies determined by respondent for the calendar year 1963 as follows:

| Docket No. | Petitioners | Deficiency |
|---|---|---|
| 4363-65 | Fred W. Woodward and Elsie M. Woodward | $9,433.29 |
| 4364-65 | F. R. Woodward and M. Jeanne Woodward | 3,122.59 |

The sole issue for decision is whether fees and costs paid in connection with litigation to determine the value of certain stock represented capital expenditures or deductible expenses. In docket No. 4363-65 petitioners claim an overpayment of $1,134.47. Certain concessions of the respondent may be given effect under Rule 50.

All the facts are stipulated and are so found.

Petitioners Fred W. Woodward and Elsie M. Woodward are husband and wife. Petitioners F. R. Woodward and M. Jeanne Woodward are husband and wife. F. R. Woodward is a son of Fred W. and Elsie M. Woodward. All of the petitioners are residents of Dubuque, Iowa. Each couple filed a joint Federal income tax return for the calendar year 1963 with the district director of internal revenue at Des Moines, Iowa.

The Telegraph-Herald is a profit corporation organized under the laws of the State of Iowa, and is engaged in publishing a daily newspaper and operating a commercial printing plant and a radio station in Dubuque.

On June 9, 1960, the Telegraph-Herald had 1,200 shares of common stock issued and outstanding. Ownership of such shares on that date was as follows:

| Owner | Number of shares |
|---|---:|
| Fred W. Woodward | 398 |
| F. R. Woodward | 58 |
| M. Jeanne Woodward | 55 |
| Elsie M. Woodward, F. Robert Woodward, M. Jeanne Woodward, and American Trust & Savings Bank of Dubuque, Iowa, as trustees of Fred W. Woodward Trust No. 1 | 200 |
| Elsie M. Woodward, F. Robert Woodward, M. Jeanne Woodward, and American Trust & Savings Bank of Dubuque, Iowa, as trustees of Fred W. Woodward Trust No. 2 | 100 |
| Charles Murphy, executor of the Estate of Ellen Murphy, deceased | 10 |
| Margaret M. Quigley | 379 |
| Total | 1,200 |

The Telegraph-Herald was originally incorporated in 1901. Its corporate existence was renewed in 1921 and 1941. Under the 1941 renewal its corporate existence was extended 20 years to November 1, 1961. The common stockholders of the Telegraph-Herald held a special meeting on June 9, 1960, for the purpose of renewing and extending its corporate existence and to consider placing certain restrictions on its common stock. This meeting was attended by all of the stockholders or their representatives, at which time a resolution was duly adopted by the holders of a majority of the stock extending the corporate existence of Telegraph-Herald perpetually.

A certificate for the renewal of the Telegraph-Herald's corporate charter was issued by the secretary of state for the State of Iowa on or about June 10, 1960.

The Telegraph-Herald's 1,200 shares of common stock issued and outstanding were all voted in favor of the renewal of the corporate existence except the 379 shares owned by Margaret M. Quigley.

Section 491.25, Iowa Code Ann. (Supp. 1966), provides as follows:

491.25 Renewal—procedure

Corporations existing for a period of years may be renewed from time to time for the same or shorter periods, or may be renewed to exist perpetually, upon compliance with the provisions of this section and other applicable statutes.

The right of renewal is vested in the stockholders and shall be exercised by a resolution thereof adopted at any regular meeting or at any special meeting called for that purpose. Such resolution must be adopted by a majority of all the votes cast at such meeting, or by such other vote as is authorized or required in the company's existing articles of incorporation.

If the renewal instrument in proper form and the necessary fees are tendered to the secretary of state for filing three months or less either prior or subsequent to the corporation's expiration date, such renewal shall take effect immediately upon the expiration of the corporation's previous period of existence, and in such case, the corporate existence shall be considered as having been extended without interruption. If the renewal is filed more than three months before or after the expiration date, such renewal shall take effect upon the date such

renewal with necessary fees is accepted and filed by the secretary of state; and in cases where filed more than three months after the expiration date, shall not be in legal effect a renewal unless the procedure provided for and the additional fees provided for in section 491.28 are fully complied with and paid.

In all cases of renewal, those stockholders voting for such renewal must purchase at its real value the stock voted against such renewal, and shall have three years from the date such action for renewal was taken in which to purchase and pay for the stock voting against such renewal, which purchase price shall bear interest at the rate of five percent per annum from the date of such renewal action until paid. As amended Acts 1955 (56 G.A.) ch. 229, § 1.

The majority stockholders voting to extend the corporate existence of the Telegraph-Herald, and Margaret M. Quigley were unable to agree upon the real value of the latter's stock. The majority stockholders, with the exception of Charles Murphy, executor of the Estate of Ellen Murphy, deceased, on February 9, 1962, filed a "Petition in Equity" in the District Court of Iowa, in and for Dubuque County, asking the court to determine and fix the real value of Margaret M. Quigley's stock. A decision was entered by the District Court on May 18, 1963, establishing a value of $1,750 per share. The District Court ordered that the costs be taxed 68 percent to the plaintiffs and 32 percent to the defendent. This decision was appealed by all parties to the Supreme Court of Iowa.

In the case of *Woodward* v. *Quigley*, 257 Iowa 1077, 133 N.W. 2d 38 (1965), the Supreme Court of Iowa determined the real value of Margaret M. Quigley's shares to be $1,650 per share. On rehearing the Supreme Court of Iowa, in *Woodward* v. *Quigley*, 257 Iowa 1077, 136 N.W. 2d 280 (1965), determined the real value to be $1,620 per share. The Supreme Court ordered that the costs be taxed one-half to the defendant and one-half to the plaintiffs.

Subsequent to the entry of final judgment in *Woodward* v. *Quigley*, *supra*, the 379 shares of Telegraph-Herald stock owned by Margaret M. Quigley were purchased on July 16, 1965, by the majority stockholders voting to extend the corporate existence of the Telegraph-Herald, as follows:

| Purchaser | Number of shares purchased |
|---|---|
| F. W. Woodward | 184 |
| F. R. Woodward | 27 |
| M. Jeanne Woodward | 25 |
| Trust No. 1 | 92 |
| Trust No. 2 | 46 |
| Estate of Ellen Murphy | 5 |
| Total | 379 |

During the taxable year 1963 the majority stockholders voting to extend the corporate existence of the Telegraph-Herald, with the exception of Charles Murphy, executor of the Estate of Ellen Murphy,

deceased, paid attorneys', accountants', and appraisers' fees, costs, and disbursements in the total amount of $37,890.75 for services rendered in connection with the determination of the real value of Margaret M. Quigley's stock as follows:

| Description of expense | Amount of payment |
|---|---|
| Clewell, Cooney & Fuerste (attorneys' fees) | $17,224.14 |
| American Appraisal Co. | 8,684.40 |
| Ernst & Ernst (accounting fees) | 5,485.00 |
| Reporting services | 4,635.76 |
| Miscellaneous | 1,861.45 |
| Total | 37,890.75 |

The proportionate share of the fees, costs, and disbursements paid by Fred W. Woodward, during the taxable year 1963 was $20,072.23.

The proportionate share of the fees, costs, and disbursements paid by F. R. Woodward and M. Jeanne Woodward during the taxable year 1963 was $5,931.51.

The respective petitioners claimed the above amounts as itemized deductions described as "professional fees incurred in relation to income-producing property" on their returns for 1963.

The fees, costs, and disbursements set forth above were reasonable in amount and were incurred in connection with the determination of the value of the Quigley stock, except for the amounts of $185 in the case of Fred W. and Elsie M. Woodward, and $85 in the case of F. R. and M. Jeanne Woodward, which amounts were paid for professional services in the preparation of various tax returns and are conceded to be deductible.

Respondent disallowed the deductions with the explanation that the amounts claimed "for 'Professional fees incurred in relation to income producing property' is not allowable because the fees represent capital expenditures incurred in connection with the acquisition of capital stock of a corporation, Telegraph Herald, instead of deductible expenditures."

We think respondent was clearly correct in his disallowance.

Petitioners contend that the expenses of the litigation are deductible under section 212 of the Internal Revenue Code of 1954 [1], (formerly sec. 23(a)(2), 1939 Code), as ordinary and necessary expenses paid for the production of income, or for the management, conservation, or maintenance of property held for the production of income.

---

[1] SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; or

Respondent's position based on the deficiency notice is that the litigation expenses in question were capital expenditures incurred in connection with the acquisition of capital stock and are therefore non-deductible under the provisions of section 263 of the Internal Revenue Code of 1954 [2] and section 1.263(a)–2(c) and (e)[3] of the regulations promulgated thereunder, as well as section 1.212–I(k) and (n)[4] of the regulations.

Petitioners wanted to renew and extend the corporate existence of Telegraph-Herald. To reach this end they had to comply with the sections of the Iowa Code governing such a transaction. Those sections required petitioners in precise language to "*purchase* at its real value the stock voted against such renewal." (Emphasis supplied.) That is what they did; petitioners purchased the stock; but since they were unable to agree on its "real value" with the nonvoting stockholders, they litigated that question and incurred the expenditures which they seek to deduct. The value-setting litigation and its attendant expenses were directly tied to the stock purchase and the expenses were part of the cost of the stock. As such, the expenses were clearly capital expenditures. The fact that the purchase was motivated by a desire to extend the corporate life is immaterial. *Atzingen-Whitehouse Dairy, Inc.*, 36 T.C. 173, 183 (1961).

Both parties argue extensively that the expenditures here involved were or were not made in defense or perfection of title to the stock and so were or were not capital expenditures. Petitioners also argue that the "primary purpose" of the litigation was to determine the real value of the shares of the dissenting stockholder and that title to such shares

---

[2] SEC. 263. CAPITAL EXPENDITURES.

  (a) GENERAL RULE.—No deduction shall be allowed for—

    \*        \*        \*        \*        \*        \*

[3] Sec. 1.263(a)–2 Examples of capital expenditures.

The following paragraphs of this section include examples of capital expenditures:

    \*        \*        \*        \*        \*        \*

  (c) The cost of defending or perfecting title to property.

    \*        \*        \*        \*        \*        \*

  (e) Commissions paid in purchasing securities. \* \* \*

[4] Sec. 1.212–1 Nontrade or nonbusiness expenses.

  (k) Expenses paid or incurred in defending or perfecting title to property, in recovering property (other than investment property and amounts of income which, if and when recovered, must be included in gross income), or in developing or improving property, constitute a part of the cost of the property and are not deductible expenses. \* \* \*

    \*        \*        \*        \*        \*        \*

  (n) Capital expenditures are not allowable as nontrade or nonbusiness expenses. The deduction of an item otherwise allowable under section 212 will not be disallowed simply because the taxpayer was entitled under subtitle A of the Code to treat such item as a capital expenditure, rather than to deduct it as an expense. For example, see section 266. Where, however, the item may properly be treated only as a capital expenditure or where it was properly so treated under an option granted in subtitle A of the Code, no deduction is allowable under section 212; and this is true regardless of whether any basis adjustment is allowed under any other provision of the Code.

was not at issue or in dispute. These contentions are beside the point and simply cloud the real issue.

To summarize, petitioners found themselves in the position of having to buy the stock of a fellow shareholder. Litigation was necessary to settle the price of the stock. The expenses in question were incurred in that litigation and no other. The result was the purchase of shares of stock by a group of shareholders from another shareholder at the litigated price. For all the record shows, petitioners still own the shares they purchased. Acquisition costs of property are not deductible. *Lucas* v. *Commissioner*, 388 F. 2d 472 (C.A. 1, 1967), affirming a Memorandum Opinion of this Court. The expenditures were capital in nature to be added to the cost of the shares and are not deductible. *Atzingen-Whitehouse Dairy, Inc., supra.*[5]

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

BRUCE, *J.*, dissenting: In my opinion the majority has erred in at least three important respects in determining that the litigation expenses in question were nondeductible capital expenditures.

First, the majority, although the only issue presented in the State court litigation out of which the expenses in question arose was the "real value" of the stock owned by Margaret M. Quigley and title to such stock was not at issue or in dispute, has failed to give effect to the *primary purpose test* which this and many other courts have recognized as controlling in the determination of the character of litigation expenses. The mere statement that such a question clouds the issue here presented is certainly not sufficient.

Secondly, the majority opinion is contrary to prior decisions of this and other courts, in particular, *Walter S. Heller*, 2 T.C. 371, affd. 147 F. 2d 376 (C.A. 9, 1945), certiorari denied 325 U.S. 868, and *Smith Hotel Enterprises, Inc.* v. *Nelson*, 236 F. Supp. 303 (D. Wisc. 1964), both of which involved State statutes similar to the Iowa statute involved herein. See also *Naylor* v. *Commissioner*, 203 F. 2d 346 (C.A. 5, 1953), reversing and remanding 17 T.C. 959. Both *Heller* and *Naylor* were followed by this Court in *Raymond K. Dykema*, a Memorandum Opinion dated Apr. 28, 1953, remanded by the Court of Appeals for the Sixth Circuit only because of an inconsistency in the findings affecting a part of the expenses involved. The rationale of the *Naylor*

---

[5] Petitioners rely heavily on *Walter S. Heller*, 2 T.C. 371, affd. 147 F. 2d 376, on this issue, under the so-called Dobson rule. That case involved the other side of the coin, i.e., sellers' expenses rather than purchasers' outlays. We do not think it is necessarily applicable here. If further reading is desirable see William T. Plumb, Jr., " 'Non-Business' Expenses Relating to Property," 2 Am. U. Tax Inst. Lectures 357–360, and 4A Mertens, Law of Federal Income Taxation, sec. 25A.14, p. 40.

case was also approved in a court-reviewed opinion of this Court, *Otto C. Doering, Jr.*, 39 T.C. 647, 650, affirmed on other grounds 335 F. 2d 738 (C.A. 2, 1964). Although sometimes criticized, apparently for factual reasons, neither *Heller* nor *Naylor* has ever been overruled. The distinction of the *Heller* case suggested in footnote 5 of the majority opinion is hardly a valid one. In my opinion it is immaterial whether the purchaser or the seller instituted the litigation in question. I see no reason for treating the purchaser different than the seller.

Thirdly, *Atzingen-Whitehouse Dairy, Inc.*, 36 T.C. 173, cited by the majority in support of its conclusion is clearly distinguishable on its facts. In that case there was no litigation of any character which might have required consideration of the *primary purpose test*. See *Naylor* v. *Commissioner*, *supra*. The only fees involved were those paid an attorney for attending conferences, preparing agreements, and handling other details necessary to consummate the purchase by a corporation of the stock of two dissident stockholders. *Lucas* v. *Commissioner*, 388 F. 2d 472 (C.A. 1, 1967) cited by the majority, is also factually distinguishable from the present case.

In my opinion, the litigation expenses incurred and paid by the petitioners in connection with the case of *Woodward* v. *Quigley*, 257 Iowa 1077, 133 N.W. 2d 38, on rehearing 136 N.W. 2d 280 (1965), were ordinary and necessary expenses paid for the management, conservation, or maintenance of property held for the production of income and as such, are deductible under the provisions of section 212 of the Internal Revenue Code of 1954.

Petitioners contend that *Woodward* v. *Quigley*, *supra*, out of which the litigation expenses in question arose, was an equitable action, the primary purpose of which was to determine the "real value" of the shares of stock owned by the dissenting stockholder, Margaret M. Quigley, and that the title to such stock was not at issue or in dispute.

As a general rule, the courts have consistently recognized that expenditures made in defense or perfection of title to capital assets are capital expenditures and are not deductible as ordinary and necessary expenses whether incurred in a trade or business or in connection with a nonbusiness transaction. *Spangler* v. *Commissioner*, 323 F. 2d 913 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court; *Robert L. Wilson*, 37 T.C. 230, affirmed per curiam 313 F. 2d 636 (C.A. 5, 1963); *Industrial Aggregate Co.* v. *United States*, 284 F. 2d 639 (C.A. 8, 1960). It has also been held that litigation or other expenses incurred in the acquisition of stock or other capital assets are capital expenditures constituting a part of the cost of property and are not deductible. See *Helvering* v. *Winmill*, 305 U.S. 79 (1938), involving brokers' purchase commissions; *Atzingen-Whitehouse Dairy, Inc.*, 36 T.C. 173 (1961), involving fees paid an attorney for attending con-

ferences, preparing agreements, and handling other details necessary to consummate the purchase by the corporation of the stock of two dissident stockholders; *Iowa Southern Utilities Co.* v. *Commissioner*, 333 F. 2d 382 (C.A. 8, 1964), certiorari denied 379 U.S. 946, affirming a Memorandum Opinion of this Court, wherein it was held that attorneys' fees and expenses incurred in a successful stockholders derivative action and directed to be paid by the corporation were related to the recovery of capital assets and were not deductible as "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business" under section 162(a) of the Internal Revenue Code of 1954; *Robert L. Wilson, supra*, which held that legal expenses paid by a widow in perfecting her dower interest in the decedent's property were capital expenditures, nondeductible under section 212 of the Internal Revenue Code of 1954.

At the same time, as was clearly pointed out by the Court of Appeals for the Eighth Circuit in *Industrial Aggregate Co.* v. *United States, supra* at 645, and in *Iowa Southern Utilities Co.* v. *Commissioner, supra* at 385–386, the mere fact that title to property happens to be involved in litigation does not necessarily mean that the litigation expenses are not deductible. The test is that of *primary purpose*. In the *Industrial Aggregate Co.* case, the court stated:

At the same time, ever since Kornhauser v. United States, 276 U.S. 145, 48 S. Ct. 219, 72 L. Ed. 505, cases recognize that the mere fact that title to property happens to be involved in litigation does not necessarily mean that expenditures of that litigation are automatically rendered nondeductible by the regulation. An example is Levitt & Sons v. Nunan, 2 Cir., 142 F. 2d 795, 797. Practicality and substance are to be recognized.[9] The test which appears to have been established is that of *primary purpose*. Thus, if the primary or sole purpose of the suit is to perfect or defend title, the expenditures are not deductible. Shipp v. Commissioner, 9 Cir., 217 F. 2d 401, 402; Lewis v. Commissioner, 2 Cir., 253 F. 2d 821, 827–828; Garrett v. Crenshaw, 4 Cir., 196 F. 2d 185, 187; Addison v. Commissioner, 8 Cir., supra, at page 523 of 177 F. 2d. On the other hand, even though title may be involved, if its defense or perfection is not the primary purpose of the litigation, the expenditures do not encounter the barrier of the regulation's standard and they may qualify instead as ordinary and necessary expenses. Rassenfoss v. Commissioner, 7 Cir., 158 F. 2d 764, 767–768; Sergievsky v. McNamara, D.C. S.D.N.Y., 135 F. Supp. 233, 237–238; Straub v. Granger, D.C. W.D. Pa., 143 F. Supp. 250, 254–255.[10] [Footnotes omitted.]

See also *Manufacturers Hanover Trust Co.* v. *United States*, 312 F. 2d 785, 789 (Ct. Cl. 1963).

As was noted by the Court of Appeals for the Eighth Circuit in *Industrial Aggregate Co.* v. *United States, supra* at 645 fn. 10, the line of demarkation is not always apparent and each case is to be examined and decided on its own facts.

Under section 491.25 of the Iowa statutes, as interpreted by the Supreme Court of Iowa in *State* v. *Shellsburg Grain & Lumber Co.*,

243 Iowa 734, 53 N.W. 2d 143 (1952) ; *Terrell* v. *Ringgold County Mut. Telephone Co.*, 225 Iowa 994; 282 N.W. 702 (1938) ; and *Melsha* v. *Tribune Pub. Co.*, 243 Iowa 350, 51 N.W. 2d 425 (1952), the duty of the majority stockholders to purchase the stock of the dissenting stockholder arose as of the date the vote for renewal was taken. The statute imposed no duty on the corporation, as such, to purchase the stock of the dissenting stockholder, and its purchase by the majority stockholders was neither a condition precedent to the renewal of the corporate charter nor a condition subsequent to the continued existence of the corporation. The renewal of the corporate charter was effective upon the expiration of the existing charter. As held by the court in *State* v. *Shellsburg Grain & Lumber Co., supra,* the extent and nature of the liability created by the vote for renewal of the corporate charter were "matters of a purely private right between the two groups of stockholders to be determined in a proper proceeding."

The case of *Woodward* v. *Quigley, supra,* was brought to resolve such a purely private right between the majority and dissenting stockholders. The corporation was not a party thereto and the action did not involve its business operations. The stock which petitioners owned in Telegraph-Herald was held by them for investment purposes and the extension of the life of the corporation was necessary to the management, conservation, or maintenance of such property. The majority stockholders recognized their obligation under the Iowa statute to purchase the stock of the dissenting stockholder.[1] The majority stockholders were interested in minimizing the value of the stock whereas the dissenting stockholder was interested in a high valuation. Being unable to agree upon the "real value" of the stock in question, the primary, and, in fact, the only purpose of the litigation was to obtain a court determination of the real value of the stock. Neither a money judgment nor the enforcement of a contract or statutory obligation was sought or determined. Title to the stock was never in question, and was only incidentally involved.[2] Title remained in the dissenting stockholder until, on July 16, 1965, the majority stockholders pur-

---

[1] The first opinion of the Supreme Court of Iowa stated (133 N.W. 2d 38, 40 (Iowa 1965)) :

"Plaintiffs recognize their obligation to purchase the stock under this statute, but the parties have been unable to agree on the "real value" of defendant's stock. This action was brought by the majority stockholders to secure a court determination of the "real value." The trial court established a value of $1,750 per share and both parties have appealed."

See also *Robbins* v. *Beatty,* 67 N.W. 2d 12 (Iowa 1954).

[2] This is further emphasized by the fact that, although the Iowa statute imposed an obligation on the majority stockholders to purchase the stock of the dissenting stockholder, there is nothing in the statute or in the decisions of the Iowa courts, which would have prevented the dissenting stockholder, if she had not been satisfied with the value found by the court, from withdrawing her objection to the renewal and retaining her stock. Thus, a sale of the stock might not have taken place.

chased the shares of stock owned by the dissenting stockholder, Margaret M. Quigley. The amounts paid for such stock are not involved in this proceeding.

In my opinion the litigation expenses incurred and paid by petitioners in connection with the above-entitled action are deductible, under the provisions of section 212 of the Internal Revenue Code of 1954, as ordinary and necessary expenses paid for the production of income, or for the management, conservation, or maintenance of property held for the production of income I would so hold.

The parties have cited three cases involving State statutes somewhat similar to the Iowa statute involved herein. Two of the cases cited by petitioners support the conclusion I have reached in this proceeding; one cited by respondent reached a different conclusion.

In *Walter S. Heller*, 2 T.C. 371, affd. 147 F. 2d 376 (C.A. 9, 1945), certiorari denied 325 U.S. 868, cited by petitioners, the issue was whether legal fees and expenses paid by a dissenting stockholder, in connection with litigation to determine the value and to enforce his rights to the cash value of his shares pursuant to a California statute providing that stockholders not consenting to a merger or consolidation were entitled to be paid such value, were deductible as expenses for the production or collection of income or in the management of property held for the production of income. This Court stated (p. 374):

The attorneys' fee paid by petitioner, while relating to a capital asset, bore a reasonable and proximate relation to the production or collection of income, and to the management of property held for that purpose. The litigation did not, as respondent urges, involve a defense by petitioner of his rights in, and his title to, the stock. The statute under which it was instituted presupposes that the "dissenting stockholders" own the shares which they are seeking to have appraised. The litigation concerned the exercise by petitioner of his right to receive cash for his shares and the determination of the amount thereof, he not having approved the contemplated merger or consolidation and having taken the other steps required by the statute. As a result of that litigation the fair market value of his stock was determined and paid to him in 1938. The attorneys' fee in our judgment was paid for services rendered in connection with "the production or collection of income," and in connection with "the management * * * of property held for the production of income." Respondent therefore erred in disallowing the claimed deduction.

In *Smith Hotel Enterprises, Inc.* v. *Nelson*, 236 F. Supp. 303 (D. Wisc. 1964), also cited by the petitioners, the corporation agreed to sell substantially all its assets, and under a Wisconsin statute was required to purchase the stock of dissenting stockholders. It paid legal and other professional expenses in litigation to determine the fair value of the shares. The District Court held the deduction of such expenses was proper as an ordinary and necessary business expense, citing *Heller*. The Court disagreed with the contrary holding in *Boulder Build-*

*ing Corporation v. United States*, 125 F. Supp. 512 (W.D. Okla. 1954), stating (p. 305) :

Counsel for the plaintiff urges that the decision in Boulder is unsound in that it disregards the fact that the taxpayer's obligation to purchase the dissenters' stock was an involuntary obligation. Under the Oklahoma statute, as well as under the Wisconsin statute, once the dissenters have demanded that the corporation purchase their shares at fair value, the corporation has no choice in the matter. After the demand has been made, the corporation's main concern is with keeping its liability to a minimum. Plaintiff's argument is sound. Viewed in this light it appears that the primary purpose of the state litigation in the instant case was a determination of the fair value of the shares, and the involvement of title was incidental. The deduction made by the taxpayer was proper as an ordinary and necessary business expense.

In *Boulder Building Corporation* v. *United States, supra,* which is strongly relied upon by respondent, a majority of the stockholders of an Oklahoma corporation, in accordance with the provisions of an Oklahoma statute, authorized the board of directors to extend the then-expiring corporate life of the company, to enlarge and amend its corporate powers, and to change its name. A minority of the stockholders demanded that the corporation purchase the minority stock at fair value as provided by the statute, and, when the two factions were unable to agree on the value of the stock, filed an action in the State district court to gain a judicial determination of the stock's value. In connection with this litigation the company paid certain appraisers' and attorneys' fees, which the Commissioner disallowed as ordinary and necessary business expense deductions The U.S. District Court for the Western District of Oklahoma held that such expenditures "cannot be deemed an expense arising out of ordinary business operation but must be considered an expenditure directly related to the acquisition of capital stock."

It does not appear that the District Court was aware of, or considered the opinion of this Court (affd. C.A. 9, 1945) in the case of *Walter S. Heller, supra,* which reached a different conclusion on substantially analogous facts. Moreover, in my opinion, the decision in *Boulder Building Corporation* is not sound. Although stating that the "fundamental contest," the "paramount issue," the "sole question," the "fundamental issue" in the State court litigation was to determine the fair value of the stock held by the minority stockholders, the Court stated: "It cannot reasonably be argued that title to the stock was involved only incidentally." This conclusion, in my opinion, failed to give effect to the *primary purpose* test and was unsound. In any event, I think the facts in the present case require a different conclusion and would so hold.

Fay, *J.*, dissenting: I agree with much that Judge Bruce says in his dissenting opinion. I believe the facts of this case are indistinguishable from those in *Walter S. Heller*, 2 T.C. 371 (1943), affd. 147 F. 2d 376 (C.A. 9, 1945). In the opinion in that case we said, at page 374:

The litigation concerned the exercise by petitioner of his right to receive cash for his shares and the determination of the amount thereof, he not having approved the contemplated merger or consolidation and having taken the other steps required by the statute. As a result of that litigation the fair market value of his stock was determined and paid to him in 1938. The attorneys' fee in our judgment was paid for services rendered in connection with "the production or collection of income," and in connection with "the management * * * of property held for the production of income." Respondent therefore erred in disallowing the claimed deduction.

The majority has not seen fit to overrule *Heller*. I think it should govern the disposition of the present case.