The **VERMONT BANK AND TRUST COMPANY**

v.

The **UNITED STATES** of America.

Civ. A. No. 5110.

United States District Court
D. Vermont.

Feb. 18, 1969.

Stephen H. Gilman, Bennington, Vt., for plaintiff.

Joseph F. Radigan, U. S. Atty., Rutland, Vt., and Richard Sideman, Tax Division, U. S. Dept. of Justice, Washington, D. C., for defendants.

## OPINION

LEDDY, District Judge.

This action has been brought by the plaintiff, the Vermont Bank and Trust Company, against the United States of America pursuant to 28 U.S.C. § 1346 (1964) for the recovery of income tax alleged to have been assessed erroneously by the Internal Revenue Service.

The facts giving rise to this controversy are not complex. The plaintiff is a banking institution organized under the laws of the State of Vermont and having its principal place of business in Brattleboro, Vermont. During the year 1955, the shareholders of two banks, the First National Bank of Bennington and the Brattleboro Trust Compay voted to merge the two banks to form the plaintiff bank. This merger became effective on December 31, 1955.

Nine of the stockholders of the First National Bank of Bennington dissented from the merger vote. Pursuant to 12 U.S.C. § 214a(b) (1964), the shareholders requested that their shares be valued for purposes of sale to the bank formed through the merger. After the merger became effective, an appraisal committee was formed for the purposes of valuing the shares held by the dissenting shareholders. This committee reported on March 5, 1956, that the value of each of the shares of the First National Bank of Bennington was fifty dollars.

Seven of the dissenting shareholders were dissatisfied with the appraisal and requested an appeal to the Comptroller of Currency of the United States. On July 13, 1956, the Comptroller issued a decision affirming the valuation fixed by the appraisal committee. Subsequently, all of the shareholders who joined in the appeal received from the Vermont Bank and Trust Company the value of their shares as fixed by the appraisal committee and the Comptroller.

One of the dissenting shareholders who joined in the appeal, Mrs. Hope Sloan, is directly involved in this action. She owned two hundred fifty shares of the First National Bank of Bennington and turned these into the plaintiff on January 12, 1956.

On July 20, 1956, she received a $12,500 check for these shares. This check bore the following endorsement:

Endorsement and negotiation of the within check acknowledges full payment for First National Bank of Bennington stock certificates No. 1214, 1215, and 1216 owned by me and surrendered for cancellation under Sec. 214(a), U. S. Code, Title 12, in con-

nection with my written dissent from the First National Bank—Brattleboro Trust merger.

This check was negotiated on August 3, 1956.

On October 10, 1959, Mrs. Sloan filed suit in the United States District Court for the District of Vermont against the plaintiff in this action alleging that the appraisal of her shares was improper and that she was entitled to a judgment for $40,000 or a new appraisal by the Court. This action was pending until April, 1964, when it was settled for $1,250 and discontinued.

After the suit was discontinued, the attorneys for the Vermont Bank and Trust Company submitted bills in the amount of $5,161.34, and these bills were paid. This fee included legal services in connection with the Sloan suit and also the $1,250 settlement amount which had originally been paid by one of the attorneys.

The total bill of the attorneys, $5,-161.34, was reported as a business expense in the 1964 income tax return of the plaintiff and taken as a deduction. On December 9, 1966, the IRS assessed a deficiency of $2,580.67 in the 1964 return on the basis that the attorneys fees could not be deducted. This amount was paid by the plaintiff and a claim for a refund was submitted to the IRS on June 9, 1967. This suit was instituted on February 12, 1968.

This case involves two issues: (1) whether the fees for legal services in connection with the Sloan suit are deductible; and (2) whether the amount paid in settlement of the Sloan suit is deductible. These issues may be separated for the purposes of analysis.

## FEES FOR LEGAL SERVICES

The plaintiff has claimed that the amount paid for legal services in connection with the Sloan suit is deductible as "ordinary and necessary expenses paid * * * in carrying on any trade or business" under section 162(a) of the Internal Revenue Code of 1954. The IRS has resisted this claim on the basis that these fees are merger expenses and that such expenses must be capitalized.

The general principles applicable to this issue are not in dispute. Although section 162(a) of the Internal Revenue Code of 1954 states that ordinary and necessary business expenses are deductible, the courts have traditionally drawn a distinction between money expended to purchase, sell, improve or defend a capital asset and other business expenses. See Larchfield Corp. v. United States, 373 F.2d 159 (2d Cir. 1966). The former type of expenses must be capitalized, that is added or subtracted from the basis of the asset so that tax gain or loss will be recognized only on the disposition of the asset. See Spreckels v. Commissioner of Internal Revenue, 315 U.S. 626, 62 S.Ct. 777, 86 L.Ed. 1073 (1942).

Under a settled line of decisions, merger expenses must be capitalized. See Mills Estate, Inc. v. Commissioner of Internal Revenue, 206 F.2d 244 (2d Cir. 1953); Rev.Rul. 125, 1967–1 Cum.Bull. 31. The theory behind this rule is that the new capital structure formed by the merger is itself an intangible capital asset and that, therefore, expenses incurred to acquire this asset must be capitalized. See General Bancshares Corp. v. Commissioner of Internal Revenue, 326 F.2d 712, 715 (8th Cir. 1964); Mills Estate, Inc. v. Commissioner of Internal Revenue, supra. The issue in this case thus reduces to whether the legal fees in connection with the Sloan suit can be properly called merger expenses and therefore capital expenditures.

The defendant has argued that the proper method of determining the question is to look to the origin of the claims in the Sloan suit. Defendant argues that since there would have been no Sloan suit without the merger, the attorneys fees are merger expenses. The defendant finds support for this method of analysis in United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). The question in *Gilmore*

was whether attorneys fees in connection with a divorce proceeding brought against the petitioner could be deducted as business expenses. The IRS had taken the position that these were personal not business expenses. The petitioner, however, alleged that a major consideration in the divorce action was a property settlement and that if he had not prevailed in that suit, he would have lost controlling interest in his business to his wife. Therefore, he argued that the expenses were necessary to protect his business and deductible.

The Supreme Court found against the petitioner. The Court held that legal expenses were deductible only if the suit involved originated from the business of the taxpayer. It found that the lawsuit before them arose out of the petitioner's personal life and therefore disallowed the deduction. The effect of the suit on petitioner's business was held to be irrelevant to the deductibility question.

In this case, it is undisputed that the fees involved arose out of plaintiff's business. The question is not, as in *Gilmore,* whether the expenses were personal or business in nature but instead whether the expenses must be capitalized. It is this Court's conclusion that the *Gilmore* test has no application to the latter question. See Powell v. United States, 294 F.Supp. 977 (D.S.D. Jan. 27, 1969).

■ ■ Money expended to acquire, sell or defend a capital asset must be capitalized for tax purposes. On the other hand, expenditures to maintain or use a capital asset may be deductible business expenses. See 4A Mertens, Law of Federal Income Taxation § 25.20 et seq. (1966). Merger expenses are generally not deductible because they are paid to acquire a capital asset—a new capital structure. But the rule should go no farther than the rationale. Expenses that originate in the merger but which were not used to create, improve or defend the merger should not be capitalized.

See Hilton Hotels v. United States, 285 F.Supp. 617 (N.D.Ill.1968).

■ The fees in this case are within the latter category. The merger that formed the plaintiff bank was effective on December 31, 1956. Its existence was not perfected by the result in the Sloan suit, nor could the Sloan suit in any way affect its validity. Therefore, the legal expenses should not be considered merger expenses for purposes of the capitalization rule. The existing case law supports this result. See Hilton Hotels v. United States, supra; Smith Hotel Enterprises, Inc. v. Nelson, 236 F.Supp. 303 (E.D.Wis.1964).

The defendant has cited a tax court case, however, which presents an alternative method of viewing the issue in this case. In Fred W. Woodward, 49 T.C. 377 (1968), the stockholders of a corporation voted to continue its existence. One stockholder dissented, however, and pursuant to Iowa law requested that the remaining shareholders purchase her shares. Disagreement arose over the proper valuation of the shares and litigation ensued. The petitioner, one of the stockholders who voted to continue the life of the corporation, attempted to deduct the legal expenses that he incurred as a result of the valuation litigation. The Court held that the expenses were not deductible because they were incurred in connection with the purchase of a capital asset—the shares held by the dissenting stockholder.

Assuming the validity of *Woodward,* analysis of the facts in this case by the method used in *Woodward* would focus on the acquisition of the shares by the plaintiff. That is, *Woodward* may be precedent for the position that since the legal fees from the Sloan suit were expended in connection with the purchase of a capital asset, Mrs. Sloan's stock, they are not deductible.

Without deciding the correctness of *Woodward*[1] or the applicability of its

---

1. Two judges dissented in *Woodward* on essentially two grounds. First, they felt that the majority had failed to follow a settled line of decisions without suffi-

principle to a case in which a corporation purchases the shares of one of the corporations from which it was formed, this Court concludes that the peculiar facts of this case make *Woodward* inapplicable. In 1956, Mrs. Sloan received a check for $12,500 for her shares of First National Bank of Bennington stock and at that time she cashed the check. Therefore, the sale of stock from Mrs. Sloan to the plaintiff was completed in 1956. It was not until three years after the sale that Mrs. Sloan brought suit. Because of the time lapse, and the fact that Mrs. Sloan had already received payment for her stock, the legal expenses in connection with the suit are too remote to be characterized as expenditures for purposes of purchasing a capital asset.

Therefore, this Court concludes that the legal expenses involved herein cannot be treated as capital expenditures but are instead ordinary and necessary business expenses as that term is used in section 162(a) of the Internal Revenue Code of 1954.

### SETTLEMENT AMOUNT

■ The settlement amount in this case, however, must be treated differently. Since the Sloan suit involved only the valuation of Mrs. Sloan's shares, the amount paid in settlement must be characterized as additional compensation for those shares. As additional compensation, it cannot be deducted as a business expense. The plaintiff, however, would have this Court look at the settlement amount not as additional compensation but as a nuisance expense to settle a suit that obviously had no merit. In doing so, the Court would have to make a judgment on the merits of that suit on the basis of the complaint and the opin-

ions of attorneys as to the issues involved therein. Such a determination is clearly impracticable. A deduction cannot be had on this basis.

---

ciently explaining a distinction or attempting to overrule these decisions. See Walter S. Heller, 2 T.C. 371 (1943) aff'd, 147 F.2d 376 (9th Cir. 1945). Second, they felt that a "primary purpose test" should have been used by the majority. Under such a test, the dissenters argued, the primary purpose of the liti-

gation must be a determination of who has title to the capital asset involved if the expenses in the litigation are to be capitalized. See Industrial Aggregate Co. v. United States, 284 F.2d 639 (8th Cir. 1960); Rassenfoss v. Commissioner of Internal Revenue, 158 F.2d 764 (7th Cir. 1946).